**The TERSON COMPANY, INC.,
Plaintiff,**

v.

**PENSION BENEFIT GUARANTY CORPORATION, Harold J. O'Brien, Robert N. Meidel, Joseph Slazas, James Murphy, William B. Hanley, William H. Smith, D.D. Locke, Jr., Randy Shenk, as Trustees of the Bakery, Cracker, Pie, Yeast Drivers and Miscellaneous Workers Union Local 734—International Chauffeurs, Warehousemen and Helpers of America Pension Fund, Defendants.**

No. 81 C 4176.

United States District Court,
N.D. Illinois, E.D.

April 22, 1982.

---

Chester W. Nosal, Logan T. Johnston, George B. Christensen, Bruce L. Bower, Winston & Strawn, Chicago, Ill., for plaintiff.

Sherman Carmell, Carmell, Charone & Widmer, D. Daniel Barr, Larry L. Thompson, Bell, Boyd & Lloyd, Chicago, Ill., for O'Brien, et al.

Dan K. Webb, U.S. Atty., Kevin J. Egan, Asst. U.S. Atty., Chicago, Ill., J. Stephen Caflisch, Sp. Counsel, Henry Rose, Gen. Counsel, Baruch A. Fellner, Assoc. Gen. Counsel, Peter H. Gould, Terence G. Craig, David F. Power, Attys., Washington, D.C., for Pension Benefit Guar. Corp.

McGARR, Chief Judge.

This is an action for a preliminary injunction in which the plaintiff The Terson Company ("Terson") seeks to enjoin the defendants, the Trustees of Local 734 of the International Brotherhood of Teamsters (the "Trustees") from collecting, declaring a default or commencing arbitration on any dispute with the plaintiff concerning payment of "withdrawal liability" demanded from Terson by the Trustees as authorized by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1380, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") 29 U.S.C. §§ 1381–1461 (Supp.1981).

Terson is engaged in the baking and food processing business. In December, 1980, it sold its Chicago bakery operations ("Buttermaid Bakeries") to Interstate Brands Corporation ("IBC") for $1,500,000. IBC hired all of Terson's employees and assumed Terson's obligations to contribute to the two pension funds at issue. In May, 1981, the Trustee requested that Terson pay approximately $3,500,000 in withdrawal liability pursuant to the MPPAA.

According to the complaint, IBC is currently making contributions to the pension fund. Neither of the pension funds are in danger of insolvency; one plan is fully funded to provide presently vested benefits and the other fund is adequately funded. Until Buttermaid Bakeries was sold, that division made all the pension fund contributions that were required under the collective bargaining agreements. *See* Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction ("Pl's. Mem.") at 5–7. The plaintiff asserts further that payment of the withdrawal liability will result in a windfall gain and unjust enrichment to the pension fund, remaining contributing employers and beneficiaries of the funds.

According to the MPPAA, an employer who effects a "complete withdrawal" from a multiemployer pension fund is subject to withdrawal liability, 29 U.S.C. § 1383 which is an allocable share of the unfunded vested benefits liability of the fund. *Id.* § 1381(a). Generally, a complete withdrawal occurs when an employer permanently ceases to have an obligation to contribute to the fund because it has discontinued business.

The statute allows the Trustees to choose any one of four ways to calculate an employer's withdrawal liability. *Id.* at § 1391. Once the employer's withdrawal liability is calculated, the Trustees must notify the employer of the amount of the liability, establish a schedule for its payment and demand payment in accordance with the

schedule. *Id.* § 1382. If the withdrawing employer fails to make a payment as scheduled, interest at the prevailing market rate accrues on the payment from its due date until it is paid. *Id.* at § 1399(c)(3). If the default is not cured within sixty days, the Trustees may declare the full amount of the liability due immediately and assess an interest penalty. *Id.* at § 1399(c)(5).

If the employer disputes the fact or amount of the withdrawal liability, the statute requires that the dispute be submitted to compulsory arbitration. *Id.* at § 1401. In the arbitration proceeding, any determination made by the Trustees is presumed correct unless the party contesting the determination establishes, by a preponderance of the evidence, that the determination was unreasonable or clearly erroneous. *Id.* § 1401(a)(3). The "presumably correct" determinations include whether a complete withdrawal has occurred, *id.* at § 1383, and whether the Trustee's determination of the amount of liability due was correct. *Id.* § 1391. If there is no arbitration, these determinations are given conclusive effect by statute, the amount claimed is converted into a debt, and the Trustees may bring a collection action in which the defaulting employer is subject to penalties, costs and attorneys' fees. *Id.* §§ 1132(g)(2), 1145, 1451(b) and 1451(e).

The Trustees have a certain amount of leeway in computing the fund's own unfunded vested benefits and allocating the employer's share. The guidelines are relatively vague. The computations may be based on actuarial assumptions and methods as long as they are not "in the aggregate, unreasonable." *Id.* § 1401(a)(3)(B). Moreover, the Trustees may determine whether "a principal purpose of any transaction is to evade or avoid liability," and whether there has been a bona fide sale of all or substantially all of the employer's assets in an arm's length transaction. *Id.* § 1392(c) and 1405(a)(1).

The MPPAA provides further that an action may be brought in a district court "to enforce, vacate or modify the arbitrator's award." *Id.* § 1401(b)(2). However, in such a proceeding, there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct. *Id.* § 1401(c).

A preliminary injunction is an extraordinary remedy. It is unavailable unless the plaintiff can meet all the prerequisites. *Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Prods., Inc.*, 545 F.2d 1096 (7th Cir.1976). The elements of a preliminary injunction are as follows: 1) The plaintiff has no adequate remedy at law and will be irreparably harmed if the injunction does not issue; 2) The threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; 3) the plaintiff has at least a reasonable likelihood of success on the merits; and 4) The granting of a preliminary injunction will not disserve the public interest. *Id.* at 1087; *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1261 (7th Cir.1980).

Terson offers several reasons to support its claim that it lacks an adequate remedy at law and that it will suffer irreparable injury if the preliminary injunction does not issue. It contends that if Terson failed to make periodic payments of its withdrawal liability, the Trustees could declare a default and require immediate payment of the entire amount plus interest. 29 U.S.C. § 1451. It maintains further that the Trustees would be entitled to the delinquent amount, interest on that amount, liquidated damages, attorneys' fees and costs. *Id.* § 1132.

Terson asserts that its only alternative is to commence arbitration over the amount and basis for the withdrawal liability. Terson objects to pursuing that course of action on several grounds. In that situation there would be a presumptive conclusion that the determinations of the Trustees were correct. *Id.* §§ 1401(a) and (c). Thus, Terson contends, it could only obtain a limited review of these actions in the district court. It also maintains that during the pendency of the arbitration and subsequent appeal, it still would be required to make withdrawal liability payments.

The Pension Benefit Guarantee Corporation (the "PBGC") and the Trustees object

to Terson's claims that it will suffer irreparable harm. The PBGC takes issue with Terson's assertion that it could be required to pay the withdrawal liability in full, and interest payments, prior to any determination on the merits of its claim. According to PBGC, a withdrawing employer is not subject to liquidated damages or to a demand for immediate payment of withdrawal liability should the employer consent to arbitration. *See* 29 U.S.C. §§ 1399(c)(3) and 1401(b)(1). Although the statute does require periodic payments as long as no arbitration proceeding has been brought, the PBGC interprets the statute as implying that if arbitration is pursued, the employer will be considered delinquent in its payments "only if the employer fails to make timely payment in accordance with the arbitrator's final decision." Brief of Defendant Pension Benefit Guarantee Corporation in Opposition to Plaintiff's Motion for a Preliminary Injunction ("PBGC Brief") at 9. The PBGC contends that the situation is the same with respect to nonpayment of withdrawal liability during the period before arbitration is requested. *Id.* at 10. Terson's objections notwithstanding, it is the position of the PBGC that were Terson to invoke its statutory right to arbitration, this would forestall the occurrence of any interest penalties or total payments coming due.

■ The court concurs in this interpretation. Since the PBGC was statutorily created to administer the MPPAA, private parties are protected should they rely on PBGC's interpretation of the statute. *Cf. United States v. National Ass'n. of Securities Dealers,* 422 U.S. 694, 717–18, 95 S.Ct. 2427, 2441–42, 45 L.Ed.2d 486 (1975). Moreover, inasmuch as neither the Trustees nor Terson have initiated arbitration proceedings within the time specified, the fact that Terson did bring this suit in order to prevent a default should toll the limitation's period. *See* Memorandum of Defendant Trustees in Opposition to the Plaintiff's Motion for a Preliminary Injunction at 2.

Next, the PBGC contends that even if Terson does not seek arbitration, it has an adequate remedy at law for any harm it may suffer as a consequence of making monthly payments. The PBGC maintains that Terson can always seek a court order requiring monthly payments to be refunded with appropriate interest.

■ The court agrees. Monetary damages, including loss of profits or temporary loss of income do not constitute irreparable injury. *See Nuclear Chicago Corp. v. Nuclear Data, Inc.,* 465 F.2d 428, 430 (7th Cir.1972). As the Supreme Court noted in *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), "[t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough." *Id.* at 90, 94 S.Ct. at 953 (citations omitted). Thus, even if the MPPAA does not provide an explicit mechanism for the return of money if it is subsequently found to have been wrongfully paid, much of that loss can be recovered by order of court. In any case, any financial loss, including loss of interest on the monthly payments that Terson may suffer is insufficient to establish irreparable harm.

■ Terson claims that following the statutorily prescribed arbitration procedures would cause it irreparable harm. It asserts that arbitration would require the expenditure of substantial time, money and effort. It maintains further that it will need to engage in multiple proceedings in order to obtain full judicial review and that arbitration will irreparably deny Terson's constitutional rights to due process, trial by jury and the right to raise its constitutional defense to withdrawal liability.

The time, expense and effort spent in pursuing an action in an available forum is a consequence of living in this society. *See Federal Trade Comm'n. v. Standard Oil Co.,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). These allegations do not constitute irreparable injury. *See Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). *See also Rosenthal & Co. v. Bagley,* 581 F.2d 1258 (7th Cir.1978).

■ Moreover, the court must consider the fact that Congress, when it created the statutory scheme encompassing ERISA and the MPPAA, deemed arbitration as the proper forum for the adjudication of claims arising out of this scheme. We cannot blithely ignore the express intent of Congress. Arbitration, as the statutorily established forum, should be resorted to first, even if the expense incurred by doing so cannot be recovered. *Yakus v. United States,* 321 U.S. 414, 439, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944).

■ The most serious question raised by Terson is the claim that by pursuing arbitration it must forsake the right to raise objections of a constitutional dimension. This is not so. Inasmuch as the constitutional issues involve factual considerations, it is appropriate that they be initially determined at the same time as factual issues are resolved, namely, in the course of arbitration. *See Rosenthal & Co. v. Bagley,* 581 F.2d 1258 (7th Cir.1978). The court can address these issues in the course of a review of the arbitration result.

■ The court must also consider whether by submitting to arbitration, Terson will waive its right to a jury trial. Having reviewed the relevant case law, this court concludes that being required to submit to arbitration will not violate Terson's Seventh Amendment rights and in turn cause it to suffer irreparable injury. In *Atlas Roofing Co. v. Occupational Safety Comm'n.,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977) the Supreme Court held that the Seventh Amendment does not prevent Congress from assigning to an administrative agency the task of adjudicating violations under the regulations of that agency. *Id.* at 455, 461, 97 S.Ct. at 1269, 1272. The Court noted that:

> Congress is not required by the Seventh Amendment to choke the already crowded federal courts with new types of litigation or prevented from committing some new types of litigation to administrative agencies with special competence in the relevant field. This is the case even if the Seventh Amendment would have required a jury where the adjudication of those rights is assigned to a federal court of law instead of an administrative agency.

*Id.* at 455, 97 S.Ct. at 1269. Moreover, the Court stated that:

> there is little or no basis for concluding that the (Seventh) Amendment should now be interpreted to provide an impenetrable barrier to administrative factfinding under otherwise valid federal regulatory statutes. We cannot conclude that the Amendment rendered Congress powerless—when it concluded that remedies available in courts of law were inadequate to cope with a problem within Congress' power to regulate—to create new public rights and remedies by statute and commit their enforcement, if it chose, to a tribunal other than a court of law— such as an administrative agency—in which facts are not found by juries.

*Id.* at 460, 97 S.Ct. at 1271. The Court concluded that the enforcement of newly created rights and remedies were entrusted by Congress to an administrative agency and this procedure was not violative of the Seventh Amendment. *See Myron v. Hauser,* 673 F.2d 994 (8th Cir.1982). According to the reasoning of *Atlas Roofing,* Terson need not secure a hearing in this court in order to preserve its right to a jury trial. To the extent that it seeks to raise constitutional violations, Terson should do so in the course of an arbitration proceeding.

■ In sum, Terson has not demonstrated the threshold requirement of irreparable injury necessary to granting a preliminary injunction. Thus, the court need not discuss the other elements. For the aforementioned reasons, the court, upon reconsideration, *sua sponte,* hereby denies Terson's motion for a preliminary injunction. The court's order of January 26, 1982 is reversed. The preliminary injunction is denied.