I have read the Protective Order entered in the cases listed above on _____, 1985, and agree to be bound by the terms of that Protective Order.

Date: _____    _____

Helen DEBRECENI, Plaintiff,
v.
GEORGE LAMOUREUX &
COMPANY, Defendant.

Civ. A. No. 84–510–C.

United States District Court,
D. Massachusetts.

March 3, 1986.

James T. Grady, Grady, Dumont & Dwyer, Boston, Mass., for plaintiff.

Charles B. Swartwood, Mountain, Dearborn & Whiting, Worcester, Mass., Samuel Adams, Ronald Kehoe, Warner & Stackpole, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought by Helen Debreceni, the Fund Manager of the New England Teamsters and Trucking Industry Pension Fund ("the Pension Fund"), against George Lamoureux & Co. ("the Company"), a company which, until July 31, 1981, was principally engaged in the sale of beer and wine in the Worcester, Massachusetts area, and was a contributor to the Pension Fund. As Fund Manager of the Pension Fund, the plaintiff is a "plan fiduciary" within the meaning of § 4301(a)(1) of the Multiemployer Pension Plan Amendments Act of 1980 ("the MPPAA"), 29 U.S.C. § 1451(a)(1). The plaintiff seeks to collect the defendant's alleged "withdrawal liability" under the terms of the MPPAA. 29 U.S.C. §§ 1381 *et seq.* The Court has jurisdiction over this case under 29 U.S.C. §§ 1401(b)(1) and 1451(c).

The matter is now before the Court on motions for summary judgment filed by both parties. Fed.R.Civ.P. 56. A court may not grant summary judgment unless the moving party has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering each party's motion for summary judgment, the Court has examined the record in detail, and has considered the facts in the light most favorable to the non-moving party. *See, e.g., Raskiewicz v. Town of New Boston,* 754 F.2d 38, 44 (1st Cir.1985).

The defendant Company's motion for summary judgment is based on its claim that the plaintiff failed to provide the Company with the notice of its alleged withdrawal liability required by 29 U.S.C. § 1399(b)(1). The defendant argues that such notice is a precondition to a suit to collect withdrawal liability, and that the plaintiff's failure to provide proper notice warrants summary judgment in its favor. In addition, the defendant claims that it is entitled to an award of its costs and expenses under 29 U.S.C. § 1451(e).

The plaintiff, Fund Manager of the Pension Fund, alleges that the defendant received adequate notice under 29 U.S.C. § 1399(b)(1), defaulted on its obligation to the Pension Fund, and did not seek arbitration within the time allowed by the MPPAA. The plaintiff argues that because of the defendant's default and failure to seek arbitration, the defendant's withdrawal liability has become a debt which the plaintiff now is entitled to collect. For the reasons discussed below, I rule that the defendant did receive adequate notice of its withdrawal liability, that its liability has become a debt which the plaintiff is entitled to collect, and that, accordingly, the defendant's motion for summary judgment should be denied and the plaintiff's motion for summary judgment should be granted.

The record in this case, when viewed in the light most favorable to the defendant, reveals the following facts: The defendant George Lamoureux & Co. was, until July 31, 1981, a small company principally engaged in the distribution of beer and wine in the Worcester, Massachusetts area, and was a contributor to the plaintiff's Pension Fund. On July 31, 1981 the Company sold all of its assets and ceased all business operations. Prior to the sale of its assets, the Company had been located in a portion of a building on Grove Street in Worcester. The Company's postal address was "Rear 112 Grove Street, Worcester, Massachusetts 01605."

Following the sale of the Company's assets, the Company's president, G. Everett Lamoureux, and treasurer, John D. Reynolds, remained at this location winding up the Company's affairs. On or about Octo-

ber 1, 1981, Rear 112 Grove Street was leased to another company. However, under an informal arrangement with that company, Lamoureux and Reynolds continued to use one office at the Grove Street premises during the months of October, November, and December of 1981. On or about January 5, 1982, this informal arrangement was terminated. Lamoureux and Reynolds removed the Company's furniture and files and stopped using the premises altogether. Neither Lamoureux nor Reynolds, or anyone else, filed a mail forwarding notice with the United States Postal Service on behalf of the Company so as to have the Company's mail forwarded to any other address.

In early November, 1981, before Lamoureux and Reynolds vacated the premises at Rear 112 Grove Street, Reynolds received a letter and a questionnaire from the plaintiff. As requested in the letter, Reynolds filled out the questionnaire and mailed it to the plaintiff on or about November 16, 1981. The questionnaire asked for the name and address of the "person responsible for satisfying debts or to be notified of claims." Knowing that the Company's occupancy of Rear 112 Grove Street would end shortly, Reynolds inserted the name and home address of the Company's president, G. Everett Lamoureux.

On February 4, 1982 the plaintiff sent to the Company, by certified mail, a "Demand for Payment of Withdrawal Liability." The demand stated, *inter alia*, that the plaintiff had determined the Company's withdrawal liability to be $297,381.00, that this amount was to be paid in 60 monthly installments of $6,046.00, with a further final payment of $5,945.00, that the first payment was to be due on April 15, 1982, and that the Company had the right within 90 days after receipt of the demand to request a review of the plaintiff's determination of its withdrawal liability. In due course, the plaintiff received the return receipt from the Postal Service. The return receipt, however, bears the signature of neither Lamoureux nor Reynolds, and both Lamoureux and Reynolds stated in

affidavits that the signature appearing on the return receipt was not familiar to them.

On April 20, 1982 the Pension Fund sent to the Company at Rear 112 Grove Street, by certified mail, a "Notice of Default." G. Everett Lamoureux, president of the Company, received the Notice of Default and signed the return receipt. The Notice of Default stated that "[i]n accordance with ... [the MPPAA] ... this is to advise you that you have failed to pay your withdrawal liability as set forth below." Listed immediately below this statement were the following entries:

| | |
|---|---|
| Company Name | George Lamoureux & Co. |
| Date of Demand | 2/4/82 |
| Total Amount Due | $297,381.00 |
| Payment Schedule | 60 payment of $6,046.00 plus final payment of $5,945.00. |
| Payment Due | 4/15/82 |

Lastly, the notice stated that if the Company's failure to pay was not cured within 60 days, the Pension Fund would declare a "Default of Payment" and the Company would be required to pay "the total outstanding amount of [its] withdrawal liability" plus accrued interest. The final line of the notice warned that the Company's "prompt attention to this matter is requested."

Subsequent to April 20, 1982, the Pension Fund received no communications from Lamoureux, Reynolds, or anyone else on behalf of the Company.

The crucial question in this case is whether the defendant Company received proper notice of its withdrawal liability under the terms of the MPPAA. The MPPAA requires a plan sponsor, "as soon as practicable after an employer's withdrawal", to notify the employer of the "amount of liability" and "schedule of payments", and to "demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1). If the employer disputes the fact or the amount of its withdrawal liability, it may, within 90 days, ask the plan sponsor to review its determination. 29 U.S.C. § 1399(b)(2)(A). Notwithstanding the employer's request for review, it must begin payment of its withdrawal liability, in

accordance with the payment schedule, no later than 60 days after the date of the demand. 29 U.S.C. § 1399(c)(2). If the employer does request the plan sponsor to review its determination, the plan sponsor must, after a "reasonable review," notify the employer of the plan sponsor's decision, the basis for the decision, and the reason for any change in the determination of the employer's liability or schedule of liability payments. 29 U.S.C. § 1399(b)(2)(B).

The MPPAA mandates that disputes concerning determinations of withdrawal liability be resolved through arbitration. 29 U.S.C. § 1401(a)(1). Either the plan sponsor or the employer may initiate an arbitration proceeding within a 60 day period after the earlier of 1) the date the plan sponsor notifies the employer of the plan sponsor's response to the employer's request for review, or 2) 120 days after the date of the employer's request for review. 29 U.S.C. § 1401(a)(1). If no arbitration proceeding is initiated by either party within the prescribed time limits, the amounts demanded "shall be due and owing on the schedule set forth by the plan sponsor," and the plan sponsor may "bring an action in a ... Federal court of competent jurisdiction for collection." 29 U.S.C. § 1401(b)(1).

The Company seeks summary judgment in its favor on the ground that the plaintiff failed to notify the Company of its alleged liability as required by 29 U.S.C. § 1399(b)(1). Such notice, the Company contends, is a precondition to a suit to collect withdrawal liability under the MPPAA. The Court rules that the defendant correctly contends that the notice requirement set forth in 29 U.S.C. § 1399(b)(1) is a precondition to a suit in federal court to collect withdrawal liability. In this case, however, there is absolutely no question that the plaintiff did provide the defendant with the notice required by 29 U.S.C. § 1399(b)(1).

The Court recognizes that a factual dispute exists with respect to whether the "Demand for Payment of Withdrawal Liability" sent by the plaintiff to Rear 112 Grove Street on February 4, 1982 was received by anyone representing or associated with the Company, so as to put the Company on notice of its withdrawal liability. The evidence in the record is uncontroverted, however, that the April 20, 1982 "Notice of Default" was sent by the plaintiff to Rear 112 Grove Street and that G. Everett Lamoureux, the president of the Company, received the notice and signed the certified mail return receipt.

■ Since the Notice of Default clearly was sent by the plaintiff and received by the Company's president, the crucial issue is whether the Notice of Default satisfied the requirements of 29 U.S.C. § 1399(b)(1). The statute requires the plan sponsor to notify the employer of the "amount of liability" and the "schedule for liability payments" and to "demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1). The Notice of Default, dated April 20, 1982, received by Lamoureux sets forth the total amount due ($297,381.00) and the payment schedule (60 payments of $6,046.00 plus final payment of $5,945.00). It also stated that the Company would be in default if its failure to pay was not cured within 60 days. The Notice of Default was clearly a demand for payment. For these reasons, and because there is no genuine issue of fact as to whether the Notice of Default was sent by the plaintiff and received by G. Everett Lamoureux, I rule, as a matter of law, that the notice requirements of 29 U.S.C. § 1399(b)(1) were satisfied in this case.

■ The plaintiff in her motion for summary judgment argues that because the Company did not initiate an arbitration proceeding in a timely fashion, the Company is foreclosed from raising any defenses of which it could have availed itself had it gone to arbitration, and that under the terms of the MPPAA the Company's withdrawal liability has become a debt which the plaintiff is entitled to collect. For the reasons discussed below, I rule that plaintiff's motion for summary judgment should be granted.

After receiving the Notice of Default within the 90 day period Lamoureux could

have requested a review of the determination of the Company's withdrawal liability, 29 U.S.C. § 1399(b)(2)(A), and after the review, if the Company did not agree with the plaintiff's final decision or if the plaintiff was late in informing the Company of its decision, the Company could have initiated an arbitration proceeding. 29 U.S.C. § 1401(a)(1). However, the Company did not seek review by the Pension Fund of its determination and did not seek arbitration; therefore, the $297,381.00 demanded by the plaintiff is now "due and owing" and may be collected in this action. 29 U.S.C. § 1401(b)(1).

Other courts which have confronted situations where an employer, like the defendant in this case, failed to avail itself of arbitration have held that the employer may not raise defenses in an action for collection in federal court which it could have raised in an arbitration proceeding. In *Trustees of Western Teamsters Pension Fund v. Arizona-Pacific Tank Lines*, 4 E.B.C. 2355 (N.D.Cal.1983), an action by a pension fund to collect withdrawal liability payments, the defendant employer, which had failed to make a timely request for arbitration, attempted to raise the defense that it had not withdrawn, within the meaning of the MPPAA, from the multiemployer plan. In rejecting the employer's attempt to raise this defense, the court noted that 29 U.S.C. § 1401 mandates that any disputes concerning determinations made under 29 U.S.C. §§ 1381 through 1399 shall be resolved through arbitration, that whether an employer has withdrawn from a plan is a determination made under §§ 1383 and 1384, and, therefore, since the employer had not initiated an arbitration proceeding it would not be permitted to raise that defense for the first time in the court proceeding.

The Company's withdrawal in this case was computed under 29 U.S.C. § 1391. The Company now seeks to contest the plaintiff's computation. The Company's contention that its liability was wrongly computed, like a contention that a company did not withdraw from a multiemployer plan, is a defense which should have been raised in an arbitration proceeding, 29 U.S.C. § 1401(a)(1); therefore, the Company may not raise that defense in this action.[1] *See also The Terson Co. v. PBGC,* 565 F.Supp. 203, 3 E.B.C. 2368, 2369 (N.D. Ill.1982); *A. Soloff & Son, Inc. v. Trustees of the Amalgamated Cotton Garment and Allied Industries Fund,* 583 F.Supp. 1098 (S.D.N.Y.1984).

Order accordingly.

---

**1.** In its answer the defendant denies that it withdrew from its multiemployer plan within the meaning of the MPPAA. The Court notes that whether an employer has withdrawn from its plan is also a question which the MPPAA requires to be raised in an arbitration proceeding before it can be asserted as a defense in a court action. *See* 29 U.S.C. §§ 1401(a)(1), 1383, 1384.