**Lennie CROSBY, et al., Individually and on behalf of all others similarly situated, Plaintiffs-Appellees,**

**v.**

**William BOWLING and Arthur F. Quern, Defendants-Appellants.**

**No. 81–2109.**

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1982.
Decided July 20, 1982.

against enforcement of the challenged regulations. The district judge found that no fees could be taxed against the federal defendants because of sovereign immunity, 28 U.S.C. § 2412 (1976); *Adams v. Carlson*, 521 F.2d 168, 169–71 (7th Cir. 1975).

The arguments raised by the state defendants in this appeal are: (1) that Crosby is not a "prevailing party" within the meaning of 42 U.S.C. § 1988 (1976); (2) that, in any event, Crosby did not prevail against the *state* defendants; (3) that "special circumstances" make a fee award against the state defendants unjust; and (4) that if the state defendants are liable for any fees, the award should be reduced to reflect their limited role in enforcing the regulations.

Val Gunnarsson, Asst. Atty. Gen., Springfield, Ill., for defendants-appellants.

Herbert Eastman, St. Cloud Area Legal Services, East St. Louis, Ill., for plaintiffs-appellees.

Before PELL, SPRECHER,* and CUDAHY, Circuit Judges.

PELL, Circuit Judge.

The defendants-appellants challenge a district court order awarding $18,439.50 in attorney's fees to the plaintiffs pursuant to 42 U.S.C. § 1988 (1976). The fee award pertains to Crosby's class-action suit, brought pursuant to 42 U.S.C. § 1983 (1976) challenging certain federal and Illinois regulations concerning the Work Incentive (WIN) program established pursuant to Title IV of the Social Security Act.[1] That suit, which named both federal and state officials as defendants, resulted in issuance of a nation-wide permanent injunction

## I. FACTS

The federal WIN program was designed to structure state plans for aid to families with dependent children along lines envisioned by the Congress to be most beneficial to the needy and supportive of family stability. The program requires all able-bodied adults seeking aid to "register for manpower services, training and employment as provided by regulations of the [United States] Secretary of Labor . . . ." 42 U.S.C. § 602(a)(19)(A) (1976). Section 602(a)(19)(F), as originally enacted, further provided that "*if and for so long as* [an individual] has been found by the Secretary of Labor . . . to have refused without good cause to participate under a work incentive program . . . such individual's needs shall not be taken into account. . . ." 42 U.S.C. § 602(a)(19)(F) (1976) (amended 1980) (emphasis added).[2] The federal regulations challenged in Crosby's suit provided that any individual found to have refused to

---

* Circuit Judge Robert A. Sprecher was assigned to the panel to hear oral argument in this case. He had read the briefs prior to oral argument but was unable to be present at the argument and did not participate thereafter in the decision of the case because of his failing health and subsequent death on May 15, 1982.

1. *See* 42 U.S.C. §§ 601–644 (1976).

2. The Act of June 9, 1980, Pub.L.No.96–265, 94 Stat. 461 (1980), amended section 602(a)(19)(F)

by substituting "(and for such period as is prescribed under joint regulations of the Secretary and the Secretary of Labor)" for the phrase italicized above. 42 U.S.C.A. § 602(a)(19)(F) (Cum.Supp.1981). This amendment is pertinent to the appellants' arguments that the plaintiffs are not prevailing parties, *see* Section II, *infra*, and that special circumstances make a fee award inappropriate in this case, *see* Section III, *infra*.

participate in the work requirements without good cause was to be denied benefits for a fixed period of ninety days. *See* 29 C.F.R. §§ 56.20, 56.51, and 56.77 (1978); 45 C.F.R. §§ 224.50, 224.51, and 225.77 (1978). The state regulations, promulgated and enforced by the state defendants, similarly provided for a fixed-period sanction.

Lennie Crosby, an Illinois resident, was a recipient of federal funds through the Aid to Families with Dependent Children (AFDC) Program administered by the Illinois Department of Public Aid. She registered, as she was required to do by 42 U.S.C. § 602(a)(19)(A) (1976), for manpower services under the WIN program in June, 1977.

Subsequently, Crosby was found to have refused without good cause to participate in the work program. She was notified that she would be deregistered from eligibility for AFDC funds for ninety days. Crosby then brought an action in the district court on behalf of herself and two classes of persons in forty-seven states. She claimed that the fixed-period sanctions prescribed by federal and state regulations were inconsistent with 42 U.S.C. § 602(a)(19)(F) (1976) (amended 1980) which provided for deregistration "for so long as" an individual refuses to participate without good cause in the work program.

On July 10, 1980, Judge Ackerman granted the plaintiffs' motion for summary judgment, finding the fixed-period sanctions invalid because they were in conflict with the express language of the statute. The district judge also found that the federal defendants were collaterally estopped from litigating the validity of the regulations because of a previous holding of invalidity in *McLean v. Mathews*, 458 F.Supp. 285, 288 (S.D.N.Y.1977). Judge Ackerman granted declaratory and injunctive relief against the state and federal defendants.

The appellees subsequently petitioned for attorney's fees pursuant to 42 U.S.C. § 1988 (1976). On December 5, 1980, the court granted the petition in part. On March 6, 1981, the court vacated its December 5th order. The following June 10th, after the appellants conducted discovery and were accorded a hearing, Judge Ackerman reentered the order of December 5, 1980 in modified form. He allowed the appellees' supplemental petition for attorney's fees. The appellees requested a total of $30,527.80 in fees and the court awarded a total amount of $18,439.50.

## II. PREVAILING PARTY

■ An award of attorney's fees can be ordered pursuant to section 1988 only if the court finds that the plaintiff was a "prevailing party." 42 U.S.C. § 1988 (1976); *Maine v. Thiboutot*, 448 U.S. 1, 9, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555 (1980). A two-part test is applied to determine whether one has prevailed. First, the plaintiff's lawsuit must be "causally linked to the achievement of the relief obtained." *Harrington v. DeVito*, 656 F.2d 264, 266 (7th Cir. 1981). Second, the defendant must not have acted gratuitously in response to a frivolous or legally insignificant claim. *Id.* The appellants' argument against the appropriateness of a fee award in this case does not focus primarily on application of this test; rather, the state defendants rely on the Congressional purpose underlying section 1988.

### A. *Did the Plaintiffs Prevail Within the Meaning of Section 1988?*

■ The legislative history of section 1988 states that the purpose of the fee provision is to give private citizens "a meaningful opportunity to vindicate the important Congressional policies which [civil rights laws] contain." S.Rep.No.1011, 94th Cong., 2d Sess. 2 (1976), *reprinted in* [1976] U.S.Code Cong. & Ad. News 5908, 5910. The appellants pose two arguments relating to this language: (1) that the appellees did not vindicate a Congressional policy, and (2) at most, the policy vindicated by the plaintiffs was not one of high priority.

The appellants rely heavily on the fact that Congress has amended section 602(a)(19)(F) so as to permit deregistration of an individual who refuses without good cause to participate in a WIN program "for

such period as is prescribed under joint regulations of the Secretary and the Secretary of Labor." Act of June 9, 1980, Pub.L.No. 96–265, 401, 94 Stat. 461 (1980) (codified at 42 U.S.C.A. § 602(a)(19)(F) (Cum.Supp. 1981)). The fixed-period sanction found invalid in this suit would therefore be permissible under the amended statutory language. The state defendants argue that this amendment merely clarified the original intent of Congress in enacting 42 U.S.C. § 602(a)(19)(F) (1976) (amended 1980). If Congress meant to permit such sanctions, the appellees cannot be said to have "vindicate[d] . . . important Congressional policies," S.Rep.No.1011, 94th Cong., 2d Sess. 2 (1976), *reprinted in* [1976] U.S.Code Cong. & Ad. News 5908, 5910; rather, they merely proved that a technical inconsistency between the statutory language and the regulations existed.

The second point urged by the appellants, on the authority of *Naprstek v. City of Norwich*, 433 F.Supp. 1369 (N.D.N.Y.1977), also relies on the amendment of section 602(a)(19)(F). If Congress originally intended to preclude fixed-period sanctions, as the court below concluded, this policy could not have been one of high priority or Congress would not have acted so promptly to amend the statutory language.

We are not persuaded by these arguments. First, the legislative history of the amendment to section 602(a)(19)(F) suggests that Congress viewed the amendment as a *change* in law rather than as a clarification. Senate Report No. 408, 96th Cong., 2d Sess. 6 (1979), *reprinted in* [1980] U.S. Code Cong. & Ad. News 1277, 1285, states that the amendment would "*authorize* the Secretaries of Labor and Health, Education, and Welfare to establish the period of time during which an individual will continue to be ineligible for assistance in the case of a refusal without good cause to participate in a WIN program" (emphasis added). The Senators' choice of the word "authorize" is significant because the Report utilizes the term "clarify" in the following sentence: "The amendment would also *clarify* the treatment of earned income derived from public service employment." *Id.* (emphasis added). The conclusion that Congress deliberately used the term "authorize" rather than "clarify" in discussing the permissible sanctions is furthered by language used later in the Report which states the Congress' "belie[f] that the *present statutory requirements should be strengthened* in such a way as to provide *additional* encouragement for welfare recipients to move into employment." *Id.* at 63, *reprinted in* [1980] U.S. Code Cong. & Ad.News 1277, 1341 (emphasis added). We cannot accept the appellants' argument that the amendment to section 602(a)(19)(F) was merely a clarification of prior Congressional intent in light of this specific reference to "strengthening" the statutory requirements so as to provide "additional" incentives for aid recipients to accept employment.

Second, we do not read *Naprstek v. City of Norwich*, 433 F.Supp. 1369 (N.D.N.Y. 1977), as holding that the plaintiffs in that case were other than prevailing parties. Although the opinion is perhaps less explicit than it might be, we believe that the district court for the Northern District of New York found that special circumstances present in *Naprstek* would make a fee award to the prevailing parties unjust. *Id.* at 1370. Even if *Naprstek* does stand for the proposition urged by the appellants, it is readily distinguishable from the instant case. The plaintiffs in *Naprstek* contended that a local juvenile curfew ordinance was unconstitutionally vague because it failed to specify a termination time. The court found that the challenged ordinance was rarely enforced and noted that the constitutional power of a municipality to enact a properly worded curfew was established. *Id.* Further, counsel for the municipality had indicated their willingness to meet with the plaintiffs' attorneys to discuss redrafting the ordinance but their offer had been refused by the plaintiffs.

In contrast to the facts of *Naprstek*, the fixed-period sanctions challenged by Crosby's class-action suit *were* enforced and there is no evidence whatsoever that either federal or state officials were willing to desist from the practice absent a judicial

order so requiring. These facts also demonstrate that this case fulfills both parts of the test enunciated by this court for determining whether a plaintiff is a prevailing party. *See Harrington v. DeVito*, 656 F.2d 264, 266 (7th Cir. 1981). The plaintiffs' claim was a legally significant one and the relief obtained by the plaintiffs was a direct result of their lawsuit. We conclude that the district judge was correct in holding that the plaintiffs were prevailing parties.

*B. Did the Plaintiffs Prevail as to the State Defendants?*

The second major argument posed by the state defendants is that if the plaintiffs have prevailed in their suit, they have done so only as to the federal defendants. The appellants urge that they had no choice but to conform the state regulations to the standard mandated by the federal rulemakers because to have done otherwise would have jeopardized the funding of the entire AFDC program in Illinois. *See* 42 U.S.C. § 602(a)(19)(F) (1976). Further, the state defendants maintain that the summary judgment entered against the federal defendants was sufficient to provide the plaintiff class full relief and the order against the state defendants was "mere surplusage."

The appellants overlook several facts. The federal regulations mandating fixed-period sanctions were first declared invalid on June 23, 1977, in *McClean v. Mathews*, 458 F.Supp. 285, 288 (S.D.N.Y.1977). The Illinois defendants continued, however, to enforce such sanctions against state AFDC recipients who declined to participate in the WIN program. Second, the state defendants actively participated in all phases of the case at bar. Their opposition to both certification of the class and the issuance of a preliminary injunction is inconsistent with the passive role which they now attribute to themselves.

We conclude therefore that the plaintiff class "prevailed," within the meaning of 42 U.S.C. § 1988 (1976), as to both the federal and state defendants.

### III. SPECIAL CIRCUMSTANCES

 The appellants correctly note that "special circumstances" may militate against an award of fees to a prevailing party. In *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam), the Supreme Court stated that "one who succeeds in obtaining an injunction under [Title II] should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." The state defendants contend that two such circumstances preclude a fee award in this case: (1) they were "coerced by the power and authority" of the federal defendants into adopting fixed-period sanctions, and (2) the state regulations were actually in accord with Congressional intent.

In evaluating the appellants' arguments, we must bear in mind that the burden of demonstrating the existence of special circumstances is on the defendant. *Williams v. Miller*, 620 F.2d 199, 202 (8th Cir. 1980); *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 38 (2d Cir. 1978). Further, the "special circumstances" limitation of section 1988 is applicable only to unusual cases. *See Riddell v. National Democratic Party*, 624 F.2d 539, 544–45 (5th Cir. 1980).

*A. Coercion by Federal Defendants*

The basis of the alleged coercion is federal control over AFDC funds. 42 U.S.C. § 601 (1976). The appellants maintain that a failure to enforce fixed-period sanctions against AFDC recipients who failed to participate in the WIN program would have resulted in the State's losing the federal dollars that funded the programs.

We start with the recognition that there is authority indicating the propriety of a fee award, pursuant to section 1988, against state defendants who have acted pursuant to an invalid federal regulation. In *Tongol v. Usery*, 601 F.2d 1091 (9th Cir. 1979), the plaintiffs challenged federal regulation 20 C.F.R. § 618.15 (1975), which required states to recoup overpayments in Federal Supplemental Benefits despite state laws that provided for waiver of recovery of

such overpayments. The district judge held the regulation to be inconsistent with the legislative purpose of the Emergency Unemployment Compensation Act and this aspect of his opinion was affirmed by the Ninth Circuit. The district judge had not awarded attorney's fees to the plaintiffs, however, because he found that they had failed to state a claim pursuant to section 1983. *Id.* at 1097. Holding that a claim had been stated under that section, the court of appeals ruled that the district court had discretion to award fees and remanded the case. The court gave no indication whatsoever that the limited enforcement role played by state officials would constitute a special circumstance militating against a fee award.

In *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), the United States Supreme Court utilized language suggesting that fees can properly be taxed against those whose role is limited to enforcement of regulations that they had no role in promulgating. In that case the plaintiffs had succeeded in their section 1983 challenge to particular provisions of the Virginia State Bar Code. The Virginia Supreme Court was responsible for propounding the Code. That court also had independent authority to enforce the Code. The State Bar had previously recommended that the court amend the provisions of the Code that were challenged by the Consumers Union, but the court had failed to do so. The district court taxed the plaintiffs' award of attorney's fees, pursuant to section 1988, against the court and its chief justice. No fees were taxed against the State Bar, however, because of its attempt to persuade the court to amend the provision.

The United States Supreme Court held that legislative immunity precluded a fee award against the court that was premised on its failure to exercise its rulemaking authority. *Id.* at 739, 100 S.Ct. at 1978. In vacating the fee award and remanding for further proceedings, the Court stated:

This is not to say that absent some special circumstances in addition to what is disclosed in this record, a fee award should not have been made in this case. We are not convinced that it would be unfair to award fees against the State Bar, which by statute is designed as an administrative agency to help enforce the State Bar Code. Fee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or an injunction.

*Id.* Although *Consumers Union* did not involve state officials charged with enforcing *federal* regulations, we think that the Supreme Court's analysis supports our conclusion that state officials can be charged with fees despite the fact that they acted in response to a federal regulation.

The conclusion that the state defendants *could* be held responsible for attorney's fees in this case does not, of course, fully resolve whether they should be. We are not persuaded by the appellants' economic coercion argument, however, because there is no evidence in the record that the state defendants even considered how they might avoid this alleged coercion. The appellants could have heeded the statutory language and, if the federal authorities actually threatened to terminate AFDC funding for failure to comply with the federal regulations, proceeded administratively, *see* 45 C.F.R. Part 213. Alternatively, the state defendants could have sought a declaratory judgment as to the validity of the fixed-period sanctions. *Smith v. Puett*, 506 F.Supp. 134, 146 (M.D.Tenn.1980). The record does not indicate other than that the state defendants willingly acquiesced in imposition of the fixed-period sanctions. We cannot conclude, therefore, that they were victims of coercion.

## B. *Intent of Congress*

The appellants urge that the consistency between the fixed-period sanctions and the amended version of section 602(a)(19)(F), 42

U.S.C.A. § 602(a)(19)(F) (Cum.Supp.1981), is a special circumstance making a fee award unjust. Because we are not persuaded that the amendment reflects the intent of the Congress that enacted the original version of section 602(a)(19)(F), *see* Section II(A) *supra,* we find no merit to this argument.

### C. *Other Special Circumstances*

The state defendants rely on several cases in support of their argument that special circumstances preclude an award of fees in this case. None of these cases directly supports the specific "special circumstances" arguments discussed above. We have therefore reserved discussion of these authorities to this point.

The appellants assert that their role in the present case is analogous to that of amici curiae and rely on *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980), for the proposition that fees are therefore inappropriate. The state defendants appear to overlook the fact that they were named parties to Crosby's suit and that relief was granted against them. As noted in Section II(B), *supra,* the appellants took an active role in litigating this case at the district court level. Because we do not find the state defendants' role in this case to be analogous to that of amici curiae, the *Northcross* case is inapposite.

The other cases on which the appellants rely are readily distinguishable. First, we note that the state defendants cite only one case, *Bibb v. Montgomery County Jail Officials,* 622 F.2d 116 (5th Cir. 1980), in which a court of appeals found that the district court had abused its discretion regarding an award of attorney's fees. The *Bibb* court did not hold, however, that special circumstances precluded an award of attorney's fees to the plaintiffs; rather, the Fifth Circuit held that the district court erred in taxing the state defendants with the entire award when many of the conditions of which the plaintiffs complained were attributable only to the county defendants. The Fifth Circuit remanded the case in order for the district court to attribute some portion of the fees to these county officials.

By contrast, the state defendants in the instant case were directly responsible for enforcement of the state regulations of which the plaintiffs complained. Further, because there is no clear authority for imposing fees on the federal defendants, we are asked to deny the plaintiffs any award pursuant to section 1988.

As noted above, none of the three other cases on which the appellants rely, *Chastang v. Flynn & Emrich Co.,* 541 F.2d 1040 (4th Cir. 1976); *Entertainment Concepts, III, Inc. v. Maciejewski,* 514 F.Supp. 1378 (N.D.Ill.1981); *Bush v. Bays,* 463 F.Supp. 59 (E.D.Va.1978), holds that the district judge abused his discretion in awarding or denying fees to a prevailing plaintiff. Further, the Fourth Circuit in *Chastang* and the district court in *Bush* both found that the defendants had acted promptly to comply with the law as soon as the law had been clarified. *Chastang,* 541 F.2d at 1045; *Bush,* 463 F.Supp. at 66. By contrast, the state defendants in the instant suit did not abandon fixed-period sanctions following the decision in *McLean v. Mathews,* 458 F.Supp. 285 (S.D.N.Y.1977), which declared such sanctions invalid. Although *McLean* clearly was not binding on the Illinois state officials, it did provide some clarification of the law.

None of the "special circumstances" cases cited by the appellants persuades us that an award of attorney's fees, taxable to the state defendants, is unjust in the present case. We therefore turn to the final argument on which the appellants rely.

The appellants urge that the district judge thought that the attorney's fees should be awarded jointly and severally against the state and federal defendants but believed himself precluded from so ordering. Essentially they argue that it is unfair for the state defendants to be charged with the entire fee award when, in their view, the greater portion of the "blame" lies with the federal defendants.

We note that the Equal Access to Justice Act, Pub.L.No.96–481, 94 Stat. 2325 (1980), would allow fees to be assessed against the federal defendants had this case been pending on October 1, 1981.[3] Although we express no view as to whether this case could be brought within the strictures of that Act, we note that the state defendants have apparently not explored this option at any length. Second, this circuit has yet to establish a rule on the question of federal liability under section 1988 relevant to those cases not within the ambit of the Equal Access to Justice Act. Although the weight of authority has denied such liability, *see, e.g., Shannon v. United States Department of HUD*, 577 F.2d 854 (3d Cir. 1978), *cert. denied*, 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 the dissent of Chief Judge Wright in *NAACP v. Civiletti*, 609 F.2d 514, 521–31 (D.C.Cir.1979), *cert. denied*, 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980), would provide the basis for an argument in favor of federal liability. We, of course, express no view as to whether such an argument would prevail. We merely note that such an approach might have been pursued by the state defendants and was not. Instead, the state defendants claim that the plaintiffs should bear their own fees because the "blame" rests with the federal defendants. In our view, this is completely inconsistent with the purposes of the section 1988 provision for an award of attorney's fees to a prevailing party. We conclude, therefore, that there exist no "special circumstances" making an award of fees unjust in this case.

## IV. APPORTIONMENT OF THE AWARD

■ The final argument posed by the state defendants is that the fee award taxed against them should be reduced to reflect their limited role in enforcing the invalid fixed-period sanctions. Our review of Judge Ackerman's order of December 5, 1980, suggests, however, that the district court considered the roles played by the federal and state defendants, respectively, in setting the amount of the fee award. The December 5th order noted both that the federal defendants were responsible for the initial promulgation of fixed-period sanctions and that Congress subsequently amended section 602(a)(19)(F). The district judge then stated that "because of the special circumstances described above, it would be unjust to force the state defendants to bear the entire burden of such an award." Although the judge referred in the same paragraph to twelve "factors" on which he relied in determining the appropriate fee award, *see Hampton v. Hanrahan*, 600 F.2d 600, 643 (7th Cir. 1979) (adopting the standards delineated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)), *modified*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), we conclude that he also gave due consideration to the degrees of liability attributable to the two classes of defendants.

This conclusion is reinforced by the fact that the district judge vacated his order of December 5th on March 6, 1981. The appellants had an opportunity to conduct discovery and were afforded a hearing by the district judge before he entered the final order pertaining to attorney's fees on June 10, 1981. The total fees awarded were approximately sixty percent of the amount requested by the plaintiffs' attorneys. We find no abuse of discretion in the amount of the final award or in the method by which Judge Ackerman arrived at that amount.

## CONCLUSION

Having concluded that the plaintiffs were "prevailing parties" within the meaning of 42 U.S.C. § 1988 (1976), that no special circumstances making an award of attorney's fees unjust are present in this case, and that the district judge did not err in the amount of fees he taxed against the state defendants, the order of the district court is hereby

AFFIRMED.

---

**3.** At oral argument before this court, the appellee argued forcefully that this case would not allow a recovery of fees pursuant to the Equal Access to Justice Act because (1) it was not pending on October 1, 1981; (2) no application was made within 30 days of final judgment; and (3) the Act is subject to a strict construction.