**Constantine John GEKAS,
Plaintiff-Appellee,**

v.

**ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION OF the SUPREME COURT OF ILLINOIS and Carl H. Rolewick, its Administrator, Defendants-Appellants.**

**Nos. 85–2376, 85–2445.**

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1986.

Decided June 12, 1986.

---

Steven P. Handler, Hannafan & Handler, Ltd., Chicago, Ill., for plaintiff-appellee.

Theresa M. Gronkiewicz, Chicago, Ill., for defendants-appellants.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

PER CURIAM.

Disciplinary Rule 2–103 of the Illinois Code of Professional Responsibility formerly prohibited direct-mail advertising by attorneys. Constantine John Gekas filed suit under 42 U.S.C. § 1983 against the Illinois Attorney Registration and Disciplinary Commission (the "Commission"), seeking a declaratory judgment that the rule violated the First Amendment, and preliminary and permanent injunctions prohibiting its enforcement. After the Illinois Supreme Court, in response to Gekas's motion, advanced the effective date of an amendment to Rule 2–103 permitting direct-mail advertising by attorneys, Gekas petitioned for $11,682.50 in attorney's fees as a prevailing party under 42 U.S.C. § 1988. The district court held that Gekas was entitled to fees, but reduced the award to $5,000. The Commission appeals from the determination that Gekas is a prevailing party; Gekas cross-appeals from the reduction of his petition for $11,682.50 in fees. For the reasons stated below, we will affirm that Gekas is entitled to fees, vacate the award of $5,000, and remand for a recalculation of fees.

I

Until May 1, 1984, Disciplinary Rule 2–103(a) of the Illinois Code of Professional Responsibility provided that "[a] lawyer shall not by private communication, ... directly or through a representative, recommend or solicit employment of himself, his partner or his associate for pecuniary gain or other benefit and shall not for that purpose initiate contact with a prospective client." The rule prohibited written, as well as in-person, communications. See Ill. Code of Professional Responsibility DR 2–103(e).

Gekas desired to conduct a direct-mail advertising campaign to members of the commodities industry. He sought advisory opinions from the Commission, the Illinois State Bar Association, and the Chicago Bar Association as to the propriety of his proposed direct-mail advertising. On March 2, 1984, John O'Malley, counsel to the Commission, informed Gekas that the Advisory Committee to the Illinois Supreme Court had adopted a recommendation that Rule 2–103 be amended to permit direct-mail advertising, and that the recommendation would be submitted to the court during its March 1984 term. O'Malley, however, refused to provide Gekas with an advisory opinion or a copy of the Committee's proposal. Gekas then spoke with Louis Davidson, Chairman of the Advisory Committee. Davidson read portions of the proposed rule for Gekas, but cautioned him that the amendment might not be adopted in its present form and, in any event, would not be effective until July 1, 1984.

On March 26, 1984, Gekas filed this action to obtain a declaratory judgment that Rule 2–103 was unconstitutional, and an injunction barring its enforcement. On March 27, 1984, O'Malley informed Gekas that the Illinois Supreme Court had adopted an amendment to Rule 2–103(b) that provided that "[a] lawyer may initiate contact with a prospective client ... by written communication distributed generally to persons not known in a specific manner to require such legal services as the lawyer offers to provide but who in general might find such services to be useful and providing that such letters and circulars and the envelopes containing them are plainly labeled as advertising material."

The amendment was to have become effective on July 1, 1984.

On March 28, 1984, Gekas's counsel telephoned O'Malley and offered to dismiss the lawsuit on the condition the Commission agreed that it would not take disciplinary action against Gekas under the old rule in the event he began his direct-mail advertising campaign before July 1, 1984. O'Malley refused to enter into such an agreement. Later that day, the parties met at the Commission's offices. O'Malley stated that if Gekas proceeded with his mailing before July 1, 1984, O'Malley would report Gekas to the Illinois Supreme Court for possible contempt proceedings.

On March 29, 1984, the parties appeared before Judge McMillen, who set a hearing for April 1, 1984. At the hearing, O'Malley stated that "if he [Gekas] sends out his ads I will report it to the [Illinois Supreme] Court and any action they might want to take, they are free to do so." After the hearing on April 2, 1984, O'Malley confirmed to Gekas's counsel that the Commission had several investigations and disciplinary proceedings pending under the old rule.

On April 3, 1984, Judge McMillen referred Gekas's application for a preliminary injunction to Magistrate Olga Jurco for hearing. The parties then agreed that Gekas would petition the Illinois Supreme Court to advance the amendment's effective date, and that the district court would stay its proceedings but would retain jurisdiction. Gekas on April 10, 1984, petitioned the Illinois Supreme Court to advance the effective date of the new rule. On April 16, 1984, the Illinois Supreme Court advanced the new rule's effective date from July 1, 1984, to May 1, 1984.

On April 24, 1984, Gekas moved for $11,682.50 in fees under 42 U.S.C. § 1988. On May 26, 1984, Magistrate Jurco recommended that Gekas's motion be denied. On October 19, 1984, Judge McMillen held that Gekas was entitled to fees as a prevailing party under § 1988, but reduced the award

to $5,000. On February 28, 1985, Judge McMillen denied the Commission's order for reconsideration, but disclosed that he had entered into "an informal attorney-client relationship" with Gekas's attorneys during December 1984 and January 1985.[1] On April 1, 1985, upon the Commission's motion, Judge McMillen vacated his decision on the Commission's motion to reconsider; the case was reassigned to Judge Kocoras. On July 10, 1985, Judge Kocoras denied the motion to reconsider. The Commission appeals and Gekas cross-appeals.

II

A. *Standard for "Prevailing Party"*

■ 42 U.S.C. § 1988 provides that "[i]n any action or proceeding to enforce a provision of section[] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." For "'purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.'" *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5908, 5912). When a case settles without a formal judicial resolution of plaintiff's claims, the plaintiff is a prevailing party under § 1988 if, first, the plaintiff's lawsuit is causally linked to the relief obtained, and, second, the defendant did not act wholly gratuitously, *i.e.*, the plaintiff's claims, if pressed, were not frivolous. *Lovell v. City of Kankakee*, 783 F.2d 95, 96–97 (7th Cir. 1986); *Harrington v. DeVito*, 656 F.2d 264, 266 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982).

■ With respect to the first element, Gekas contends, and the Commission agreed in oral argument, that the question as to whether the plaintiff's lawsuit is

---

1. The record does not reveal the nature of Judge McMillen's "informal attorney-client relation-

ship" with plaintiff's counsel. The propriety of this relationship is not an issue on appeal.

causally linked to the relief obtained is a question of fact. We concur. There is no "rule or principle that will unerringly distinguish a factual finding from a legal conclusion." *Pullman-Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982). Nevertheless, as Justice O'Connor recently wrote for the Court, "the decision to label an issue a 'question of law,' a 'question of fact,' or a 'mixed question of law and fact' is sometimes as much a matter of allocation [of authority between the primary and the secondary decision-makers] as it is of analysis." *Miller v. Fenton,* —— U.S. ——, ——, 106 S.Ct. 445, 451–52, 88 L.Ed.2d 405 (1985). The distinction between questions of fact and of law "at times has turned on a determination that, as a matter of sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." *Id.* at ——, 106 S.Ct. at 452. In the context of fee disputes, the district court, given its familiarity with the parties and the proceedings, is better positioned than the court of appeals to decide whether a plaintiff's lawsuit is causally linked to the relief obtained. "Duplication of the trial court's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources." *Anderson v. City of Bessemer,* 470 U.S. 564, ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). We, therefore, hold that a district court's determination whether the plaintiff's lawsuit is causally linked to the relief obtained is a finding of fact, which is subject to review for clear error. *See Ekanem v. Health and Hospital Corp. of Marion County,* 778 F.2d 1254, 1258 (7th Cir.1985) (clearly erroneous standard of review applied); *Toth v. United Automobile, Aerospace and Agricultural Implement Workers of America,* 743 F.2d 398, 407 (6th Cir.1984) (same); *Nadeau v. Helgemoe,* 581 F.2d 275, 280 (1st Cir.1978) (Coffin, J.) (whether claim is causally linked to relief obtained is question of fact).

With respect to the second element, the standard by which the merit of the plaintiff's claims is judged is whether plaintiff's claims were "frivolous, unreasonable, or groundless." *Lovell,* 783 F.2d at 97 (quoting *Harrington,* 656 F.2d at 266–67); *cf. Crosby v. Bowling,* 683 F.2d 1068, 1070 (7th Cir.1982) ("frivolous or legally insignificant" standard). "A suit is frivolous if it has no reasonable basis, whether in fact or in law." *Tarkowski v. County of Lake,* 775 F.2d 173, 176 (7th Cir.1985); *see also Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 420, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978). The district court's determination whether a plaintiff's claims were frivolous is subject to review for an abuse of discretion. *See Clark v. Universal Builders, Inc.,* 706 F.2d 204, 213 (7th Cir.1983); *Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir.1981).

### B. *Whether Gekas is a Prevailing Party*

In this case, the magistrate recommended that the district court find that Gekas was not a prevailing party on the ground that his suit did not cause the Illinois Supreme Court to advance the effective date of the amendment to Disciplinary Rule 2–103. The district judge reviewed de novo the magistrate's recommendation, *see Delgado v. Bowan,* 782 F.2d 79, 82 (7th Cir.1986), and found that "[w]ithout the instigation afforded by plaintiff's lawsuit, ... the Illinois Supreme Court would not have advanced the effective date of its Rule from July 1, to May 1, 1984."

Having reviewed the record, we cannot conclude that this factual determination is clearly erroneous. The Illinois Supreme Court was aware of Gekas's lawsuit from its inception. For example, on March 27, 1984, the date after suit was filed, O'Malley wrote Gekas stating that "Chief Justice Ryan of the Supreme Court of Illinois has authorized me to advise you that the Court has adopted the proposed modification to Disciplinary Rule 2–103 submitted by the Committee on Professional Responsibility." The petition to advance the amendment's effective date that Gekas filed on April 10, 1984, also referred to the pending federal lawsuit. The district court reasonably could infer from the Illinois Supreme

Court's knowledge of Gekas's lawsuit either that the lawsuit caused the court to advance the new rule's effective date, or that the court advanced the effective date independently of the pending lawsuit. Each conclusion "has support in inferences that may be drawn from facts in the record; and if either interpretation had been drawn by ... [the] district court on the record before us, we would not be inclined to find it clearly erroneous." *Anderson*, 470 U.S. at ——, 105 S.Ct. at 1513.

Thus, the district court reached one of two possible reasonable inferences. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at ——, 105 S.Ct. at 1512. We, therefore, conclude that Gekas's lawsuit was causally linked to the advancement of the amendment's effective date.

■ In addition, Gekas's lawsuit was not frivolous. *In re R.M.J.*, 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982), and *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), called into question the constitutionality of the former Disciplinary Rule 2–103. The Commission, nevertheless, argues that Gekas's lawsuit was unnecessary because the Commission advised him that he would not be disciplined under the old rule. The Commission concedes, nonetheless, that O'Malley stated that, if Gekas began his direct-mail campaign before the new rule's effective date, O'Malley would report Gekas to the Illinois Supreme Court for possible contempt proceedings for violation of the court's procedures for the promulgation of its rules. It, however, seems to draw a distinction between disciplinary proceedings conducted by the Commission and contempt proceedings before the Illinois Supreme Court. This distinction is one without a difference. Whether by disciplinary or contempt proceedings, Gekas was subject to punishment for violation of a rule of dubious constitutionality.

The Illinois Code of Professional Responsibility defines the ethical obligations of members of the bar of the Supreme Court of Illinois. The Attorney Registration and Disciplinary Commission is charged with the responsibility of assuring that attorneys obey these prescriptions. The Illinois Supreme Court and the Commission thus are entitled to great deference, within the bounds of the Constitution, to define and to enforce the ethical obligations appropriate for the practice of law in Illinois. In this case, however, it is likely that the challenged rule fell afoul of the First Amendment. Although the Illinois Supreme Court had adopted an amendment that would permit direct-mail advertising as of July 1, 1984, Gekas was entitled to a timely determination and vindication of his constitutional rights.

Because Gekas's lawsuit was causally linked to the advancement of the new rule's effective date, and his suit was not frivolous, he is a prevailing party entitled to attorney's fees under 42 U.S.C. § 1988.

C. *Calculation of Fee Award*

■ The district court's discretion as to whether fees should be awarded to a prevailing plaintiff is circumscribed; however, the method of calculating a fee award rests within its sound discretion. *See Kirchoff v. Flynn*, 786 F.2d 320, 329 n. 1 (7th Cir. 1986) (Eschbach, J., dissenting) (citing cases concerning district court's discretion). Nevertheless, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *see also Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984).[2] The district court may adjust this

---

**2.** In general, a reasonable fee is the market value of the services provided. When the market price for legal services is set by contingent fees, the district court may determine a reasonable fee by multiplying the amount of the judgment by the appropriate contingency factor, and by adjusting that product upwards or downwards according to the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488

"lodestar" upwards or downwards according to the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). *See Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. It, of course, must explain its reasons justifying the fee award.

▪ In this case, Gekas petitioned for $11,682.50 in fees. Gekas's counsel averred that they had spent 11.5 hours at a rate of $140.00 per hour and 118.5 hours at a rate of $85.00 per hour. Judge McMillen did not find that the hours expended and the rate billed to be either reasonable or unreasonable. Instead, he stated that "complaints ... [should] not be filed for the primary purpose of obtaining attorneys' fees. Although ... [I am] not suggesting that this was the motivation of plaintiff or his attorneys in this case, ... [I] believe that the attorneys should not make their normal profit on their time in cases of this sort." He then awarded $5,000 in fees.

The reasons stated by Judge McMillen are inadequate to support the fees awarded. First, the district court did not determine the number of hours that reasonably were expended, and the market rate for those services. Rigorous proof of hours and market rates is not a "Procrustean bed to which every fee proceeding must be fitted despite its actual dimensions." *Henry v. Webermeier*, 738 F.2d 188, 193 (7th Cir.1984). Nevertheless, even if the district court chooses not to require rigorous proof of hours and market rates when only a few hundred or perhaps a few thousand dollars in fees are being sought, it should determine the number of hours that were reasonably spent and the market rate for the services.[3] *Playboy Enterprises v. St. Paul Fire & Marine Insurance*, 769 F.2d 425, 430 (7th Cir.1985); *Munson v. Friske*,

754 F.2d 683, 697 (7th Cir.1985); *Henry*, 738 F.2d at 195. In this case, we cannot tell whether the district court adopted the hours and market rates submitted by Gekas.

▪ Second, the district court did not explain its reasons for the particular reduction that it imposed. It, of course, may adjust the lodestar amount upwards or downwards according to the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717–19, that Congress adopted when it enacted § 1988. *See Blum v. Stenson*, 465 U.S. at 897 & n. 13, 104 S.Ct. at 1548 & n. 13. Nevertheless, "in all but the most unusual circumstances, any downward modification of the lodestar figure should be for one of the enumerated factors and should be expressed in a dollar amount reflecting, as best as possible, the market value associated with the specific defect. If the circumstances should ever arise in which an overall penalty should be assessed, the reasons for that step will have to be given with great detail and thorough justification." *Lynch v. City of Milwaukee*, 747 F.2d 423, 430 (7th Cir. 1984); *see also Heiar v. Crawford County*, 746 F.2d 1190, 1204 (7th Cir.1984) (The "district judge should not have simply halved the amount of the fee that ... [the plaintiffs] requested."); *Henry*, 738 F.2d at 193 ("[I]f ... [the district judge] wanted to give the lawyers less he had to give reasons justifying the particular cut that he wanted to impose...."). Assuming that the district judge adopted $11,682.50 as the lodestar amount, we cannot discern why he reduced the award to $5,000, rather than $9,600, or $2,500, or any other amount.

▪ Third, the sole reason that the district judge gave for reducing the fee award is incorrect.[4] Simply that a lawsuit may

---

F.2d 714, 717–19 (5th Cir.1974). *See Kirchoff v. Flynn*, 786 F.2d 320, 323–28 (7th Cir.1986).

**3.** This, of course, assumes that the district court uses the lodestar approach, rather than calculating the award according to a contingent fee. If the court uses a contingent fee, it should state its reasons justifying the particular contingency

factor that it uses. *See Kirchoff v. Flynn*, 786 F.2d 320, 328 (7th Cir.1986).

**4.** Judge McMillen also stated that he "frankly believe[d] that the matter was not of that great significance, inasmuch as plaintiff opened his private law practice in January 1984 and knew, before filing his lawsuit on March 26, 1984, that the [Illinois] Supreme Court was going to

have been brought because fees were available under § 1988 does not mean that it was brought for the primary purpose of obtaining fees. The client was formerly the exclusive source of fees for plaintiff's counsel in most civil rights cases; however, the inability of many plaintiffs to finance the costs of trial often discouraged attorneys from filing meritorious suits. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5908, 5910. Recognizing this, Congress enacted § 1988 to encourage attorneys to act as private attorneys-general in bringing meritorious suits. *See id.* at 3, 1976 U.S. Code Cong. & Ad. News at 5910. Thus, Congress intended that attorneys would file suits, which otherwise would not have been brought, simply because fees were available under § 1988.

Indeed, Judge McMillen recognized that this lawsuit was not filed for the primary purpose of obtaining fees. He, nevertheless, reduced the plaintiff's fee award to discourage other attorneys from filing cases simply to obtain fees. Reducing a fee award for this purpose would frustrate Congress's intent that plaintiffs receive a reasonable fee that is "adequate to attract competent counsel," and that "counsel for prevailing parties be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended.' " *Id.* at 6, 1976 U.S. Code Cong. & Ad. News at 5913 (quoting *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D.Cal. 1974)). It, moreover, would be inconsistent with the Supreme Court's command that the "amount of the fee ... must be determined on the facts of each case." *Hensley*, 461 U.S. at 429, 103 S.Ct. at 1937.

Because we cannot ascertain whether the district judge adopted the hours and rates submitted by Gekas or why he reduced the award to $5,000, and because the only reason given for reducing the award is incor-

rect, we must vacate the award of fees, and remand for recalculation of the award. We, however, do not suggest that $5,000 is an unreasonable fee, or that $11,682.50 is a reasonable fee. On remand, the district court is free to determine a reasonable award in accordance with law.

### III

For the reasons stated above, the district court's determination that Gekas is entitled to fees is AFFIRMED, and its award of $5,000 in fees is VACATED and REMANDED for proceedings consistent with this opinion.

---

change its rule effective July 1, 1984." Since O'Malley did not inform Gekas until March 27, 1984, that the Illinois Supreme Court had made its new rule effective as of July 1, 1984, it is doubtful that Gekas knew that the Illinois Supreme Court would amend its Rule 2–103 until

after he filed his lawsuit. In any event, Judge McMillen's suggestion does not justify reduction of the fee award. As we noted above, Gekas was entitled to a prompt determination and vindication of his constitutional rights.