**Sandra ROSE, et al., Appellants,**

v.

**Stephen B. HEINTZ, et al., Appellees.**

**No. 56, Docket 86–6044.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 17, 1986.

Decided Dec. 2, 1986.

Dennis J. O'Brien, Connecticut Legal Services, Inc., Willimantic, Conn. (Gregory Read, Connecticut Legal Services, Inc., Waterbury, Conn., of counsel), for appellants.

Edmund C. Walsh, Asst. Atty. Gen., Hartford, Conn. (Joseph I. Lieberman, Atty. Gen., State of Connecticut, of counsel), for appellees.

Before OAKES, MINER and MAHONEY, Circuit Judges.

OAKES, Circuit Judge:

This is an appeal from the denial of an award of attorneys' fees sought under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982). The case concerned the eligibility of certain Connecticut stepchildren for medical assistance under the Medicaid program authorized by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396p, a program funded jointly by the state and federal governments. The United States District Court for the District of Connecticut, T. Emmet Clarie, Judge, denied the application for fees on the ground that the state agency here involved, the Connecticut Department of Income Maintenance ("DIM"), had acted

not under color of state law but solely under color of federal law when it wrongly terminated or denied Medicaid benefits to eligible stepchildren. Reasoning from this conclusion, the court held that the appellants had not stated a cause of action under 42 U.S.C. § 1983 (1982), citing *Ellis v. Blum,* 643 F.2d 68, 83 n. 17 (2d Cir.1981), *Askew v. Bloemker,* 548 F.2d 673, 677 (7th Cir.1976), and *Lynn v. United States Department of Health & Human Services,* 583 F.Supp. 532, 533 (S.D.N.Y.1984), and therefore could not recover fees under section 1988. As the district court itself noted, however, the instant case is distinguishable from the cited cases because the costs of the Medicaid program are shared by the state and federal governments. For this reason, among others, we reverse and direct that the district court award counsel fees to the appellants under section 1988.

Through the Medicaid program the federal government makes limited reimbursement funds available to states that adopt, fund, and administer programs for the provision of medical assistance to certain needy individuals, including dependent children. As a matter of state law, the Connecticut DIM is authorized to participate in the Medicaid program by Conn.Gen.Stat. § 17–134a *et seq.* (1975). This arrangement is similar to the jointly funded federal/state program of Aid to Families with Dependent Children ("AFDC") established by Title IV–A of the Social Security Act, 42 U.S.C. §§ 601–615 (1982), which also provides partial funding to participating states for provision of financial aid to needy dependent children. Connecticut's participation in AFDC is authorized and governed by Conn.Gen.Stat. § 17–85 *et seq.* (1975).

The plaintiffs in the instant action are stepchildren. Prior to May 1, 1982, their eligibility for Medicaid and AFDC benefits was determined by DIM absent consideration of the income of their stepparents.[1] This changed, however, as a result of Con-

gress's enactment of the Omnibus Budget Reconciliation Act of 1981 ("OBRA"), Pub.L. No. 97–35, 95 Stat. 357. Section 2306 of OBRA, 95 Stat. at 846, amended 42 U.S.C. § 602(a), to require states to consider stepparent income in determining eligibility for AFDC payments, but did not mention Medicaid or refer in any way to the Medicaid statutes. Following the enactment of OBRA, the Connecticut legislature amended Conn.Gen.Stat. § 17–85, dealing with AFDC eligibility, to conform with 42 U.S.C. § 602(a) as modified by OBRA. In addition, on March 9, 1982, the Connecticut DIM promulgated Departmental Bulletin No. 3433 stating, among other things, that the new stepparent income rule would be applied to AFDC cases effective March 15, 1982. The Connecticut legislature at no time changed or amended Conn.Gen.Stat. § 17–134b, Connecticut's Medicaid eligibility statute, and of course no change was called for by OBRA as it did not mention Medicaid in this connection.

As the above indicates, neither federal nor state law authorized application of the new AFDC stepparent "income-deeming" provision to the Title XIX Medicaid program. Nevertheless, in a separate memorandum dated March 18, 1982, DIM's Director of Program Planning and Staff Development issued a "policy clarification" requiring that stepparent income be "counted in determining Medicaid eligibility." This clarification was made with full knowledge that OBRA had addressed inclusion of a stepparent's "deemed" income only in respect to AFDC and not in respect to Medicaid.

Apparently DIM adopted this "clarified" policy because under 42 U.S.C. § 1396a(a)(10)(A) the individual stepchildren involved were categorically eligible for Medicaid benefits only because they already satisfied AFDC eligibility requirements. No formal ruling was requested by the state agency from the Department of Health and Human Services ("HHS"), but

---

**1.** It is to be noted that under Connecticut's statute governing legal liability for support of relatives, Conn.Gen.Stat. § 46b–215 (Supp.1986),

stepparents are not required to support their stepchildren financially.

in early March 1982 DIM did telephone the HHS Boston Regional Office to ask for its interpretation.[2] An official at the Regional Office responded to the telephone request for clarification by stating that Medicaid benefits to Connecticut stepchildren no longer eligible for AFDC must also be terminated. Without more, DIM proceeded to issue the March 18, 1982, "clarification," thereafter rendering some 2,100 stepparent families in Connecticut ineligible for Medicaid benefits for their stepchildren. This suit was then filed by present counsel in June 1982.

After the plaintiffs moved for a preliminary injunction the federal government filed a brief on August 6, 1982, conceding that, in its view, the specific provisions of the Medicaid program limiting relative responsibility "do not permit States to deem stepparent income in the Medicaid program as they are required to do in the AFDC program." Subsequently, on August 11, 1982, a letter from DIM to HHS announced DIM's intent to conform its policies with the "newly-enunciated" HHS position. It was not until October 6, 1982, however, that DIM reversed its course and began reinstating improperly terminated individuals. To recapitulate, as of August 6, 1982, DIM had received a formal, written HHS interpretation that stepchildren in those states where stepparents were not legally liable for their support were indeed entitled to Medicaid benefits after OBRA, despite their ineligibility under AFDC. And, as of October 6, 1982, DIM had retroactively corrected ineligibility in accord with the federal government's response to the lawsuit and because of the lawsuit. As a September 16, 1982, letter from HHS to the Commissioner of DIM declared, the eligibility policy had been "clarified as a result of the Rose case."

■ Seen in this light, the State's argument that plaintiffs were not "prevailing parties" within the meaning of 42 U.S.C. § 1988 is unavailing. As we held in *Gere-*

*na-Valentin v. Koch,* 739 F.2d 755 (2d Cir. 1984), the appropriate causal connection between the suit and the action taken vindicating plaintiff's rights "exists if the plaintiff's lawsuit was 'a catalytic, necessary, or substantial factor in attaining the relief.' " *Id.* at 758–59 (quoting *Commissioners Court of Medina County, Texas v. United States,* 683 F.2d 435, 440 (D.C.Cir.1982)); *see also Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). The present lawsuit was clearly such a factor. Thus, there is no question whatsoever of liability for attorneys' fees absent the argument that the state defendant Commissioner did not act under color of state law when he initially terminated the plaintiffs' eligibility for Medicaid.

As to that argument, the district court found that the Connecticut DIM had acted purely under color of federal law. It did so on the basis that even though the costs of the Medicaid program are shared by the state and federal government, the Commissioner was required by both federal and state statutes to base his action upon federal law and regulations. *See* 42 U.S.C. § 1396a(a)(17)(B); Conn.Gen.Stat. §§ 17–134a, 17–134b(a). From this fact the court concluded that the actions of the Commissioner were not taken under color of state law. On appeal, however, the State makes the somewhat different argument that it was implementing its Medicaid policy according to the interpretation of federal law given by HHS in the March 1982 informal telephone call from DIM to the Boston Regional Office. Essentially, the State's argument is that the Commissioner "did everything he possibly could do, first to ascertain and then to apply the HHS interpretation of federal law." In addition, the State argues that the Commissioner had to have been acting under color of federal law because there were no substantive provisions whatever in state law or policy regarding the effect of stepparent income on Medicaid eligibility. Indeed, the State

---

**2.** We realize, of course, that the states are encouraged to consult with HHS Regional Offices    by virtue of 45 C.F.R. § 201.3 (1985).

claims that the plaintiffs did not suffer a deprivation of a federal statutory right to Medicaid benefits when they were initially terminated because at that time HHS's view was that plaintiffs were ineligible and the Secretary's subsequent revision of his original interpretation applied only after the time the policy was revised.

■ None of these arguments is persuasive. As we have stated above, Medicaid funds were and are jointly funded by the state and federal governments. In issuing the March 18, 1982, "policy clarification" regarding stepparents' unearned income, the Connecticut DIM itself was implementing an improper policy. That it did so pursuant to a telephone conversation with an HHS official does not make DIM's action any less an action under color of state, as well as federal, law.

Other courts have similarly held that state officials can be held accountable for attorneys' fees despite the fact that they acted in response to a federal regulation. *See, e.g. Crosby v. Bowling*, 683 F.2d 1068, 1072–73 (7th Cir.1982); *Tongol v. Usery*, 601 F.2d 1091, 1097 (9th Cir.1979). In *Tongol* the Ninth Circuit stated that section 1983's color of state law requirement depends "not on whose law is being implemented, but rather on whether the authority of the state was exerted in enforcing the law." 601 F.2d at 1097 (citing *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), *cited with approval in Owen v. City of Independence, Missouri*, 445 U.S. 622, 650–51, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980), *and Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 211–12, 90 S.Ct. 1598, 1630–31, 26 L.Ed. 2d 142 (1970) (Brennan, J., concurring in part and dissenting in part)). Similarly, in *Crosby* the Seventh Circuit pointed to *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 739, 100 S.Ct. 1967, 1978, 64 L.Ed.2d 641 (1980), which had said that "[f]ee awards against enforcement officials are run-of-the-mill occurrences," in holding that a state can be liable for fees, at least where there was no evidence that state defendants sought to avoid being coerced by the federal government's power to withhold federal funds into adopting certain policies. *See* 683 F.2d at 1073. The *Crosby* court relied on *Smith v. Puett*, 506 F.Supp. 134, 145–46 (M.D. Tenn.1980), in which Tennessee was held liable for fees under section 1988 despite its argument that a welfare policy later held invalid by the court had been forced upon it by the federal agency. *See also Martin v. Heckler*, 773 F.2d 1145, 1150 (11th Cir.1985) (en banc) (Florida agency held responsible for section 1988 fees to plaintiffs prevailing on a section 1983 claim as to an AFDC regulation even though the offending state regulation was promulgated in response to a federal action transmittal issued by HHS). At the very least, DIM was not "coerced by HHS," which is enough under these other cases; here the agency did not even act prudently in making its own determination of what the law required. A simple telephone inquiry without a written request for confirmation hardly seems responsible state action in a situation obviously involving the eligibility for Medicaid of hundreds if not thousands of people in a class as broad as "stepchildren."

Judgment reversed.