565 F.Supp. 27 (1983)
MEATCUTTERS UNION LOCAL NO. 88 and Food Employers and Allied Industry Pension Plan and Robert Geigle, Plaintiffs,
v.
DEL MONTE SUPERMARKETS, INC., Defendant.
No. 82-1855C(B).
United States District Court, E.D. Missouri, E.D.
May 18, 1983.
Terry A. Bond, St. Louis, Mo., Lloyd J. Dickinson and Gregory C. Braden, Milwaukee, Wis., for plaintiffs.
David F. Yates and Gerard F. Hempstead, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
REGAN, District Judge.
This matter is before the Court on cross-motions for summary judgment.
The action was brought pursuant to the Employee Retirement Income Security Act (ERISA) as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA) seeking to collect $163,800 assessed against Del Monte Supermarkets, Inc. as its alleged withdrawal liability, together with interest thereon of $31,785 and attorneys' fees.
The following facts are not in dispute. As of September, 1978, Del Monte operated four retail food stores in the St. Louis, Missouri, area. A collective bargaining agreement between Del Monte and United Food and Commercial Workers Local Union No. 88, applicable to the meat department employees in all four stores, provided for contributions to be made by Del Monte to the plaintiff pension Plan on behalf of its Local 88 employees. In September, 1978, *28 Del Monte closed one of its stores which was operating in the "red", and as a consequence terminated the employment of its meat department employees in that store.
Following the expiration of its then current collective bargaining agreement, Del Monte and Local 88 entered into a new three year collective bargaining agreement as of January 28, 1979 under the terms of which pension plan contributions were again agreed to be made by Del Monte on behalf of its meat department employees in its three remaining stores. Several months thereafter (in late spring, 1979) Del Monte closed a second store, again for financial reasons, with the result that no pension plan contributions were made on behalf of the meat department employees whose employment had terminated with the closing of the second store.
MPPAA, enacted September 26, 1980, imposes liability only on employers who withdrew either partially or completely from a multi-employer pension plan after April 29, 1980. Subsequent to the enactment of MPPAA, Del Monte closed its remaining two stores, the first in November, 1980 and the second on April 25, 1981, and after the last closing no further contributions were made by Del Monte to the pension plan until December 5, 1982 following its opening of a new store and the execution in December, 1982, of a new collective bargaining agreement with Local 88 covering Del Monte's meat department employees. It has since opened two additional stores employing Local 88 meat cutters for whom it makes contributions to the pension plan.
On the premise that by reason of the closing of the last of its four original stores and the consequent cessation of its contributions to the pension plan, Del Monte "made a complete and permanent withdrawal from participation in the [pension] plan", notice under date of October 19, 1981 was given to Del Monte's attorney by letter from the attorney for the Plan that it was liable in the sum of $163,800 and that a quarterly payment schedule therein set forth, commencing November 1, 1981, should be adhered to. Admittedly, the calculations on which the asserted liability was based included contributions Del Monte had made with respect to the employees at the two stores which had been closed prior to April 29, 1980.
29 U.S.C. § 1397(a) provides in pertinent part:
"For the purpose of determining the amount of unfunded vested benefits allocable to an employer for a partial or complete withdrawal from a plan which occurs after April 29, 1980, ... the amount of contributions and the number of contribution base units, of such employer properly allocable ...
(1) ...
(2) to work performed at a facility at which all covered operations ceased before April 29, 1980, or for which there was a permanent cessation of the obligation to contribute before that date,
shall not be taken into account."
The word "facility" is not defined either in MPPAA or in ERISA, so far as we are aware. Seizing upon the omission, plaintiff has taken the position that it may define the word "facility" as it sees fit, and in order to include the two stores which were closed prior to April 29, 1980 in calculating Del Monte's alleged withdrawal liability, plaintiff asserts that the term "facility" means "all store locations covered by a single collective bargaining agreement",[1] and since not all of Del Monte's stores which were covered by a single collective bargaining agreement were closed prior to April 29, 1980, Section 1397(a) is inapplicable. In our judgment, the Plan's construction of the term "facility" comports with neither logic nor the law.
*29 Plaintiff's basic position is that Del Monte is foreclosed from contesting its withdrawal liability as determined by the Plan by reason of the failure to request arbitration within the period prescribed by 29 U.S.C. § 1401(a). Hence, so it argues, Del Monte may not, in defense of this suit, raise any issue either as to the correctness of the Plan's determination that it made a complete and permanent withdrawal as of April 25, 1981 or as to the amount and method of calculating the withdrawal liability.
In view of our disposition of this matter infra, we deem it unnecessary to decide whether Del Monte may obtain arbitration after the statutory period has elapsed and whether the factual issues determined by the trustees (without a hearing) may be judicially reviewed.
Of importance is Section 1397(a)(2) quoted in part supra. If each of the stores operated by Del Monte is "facility" within the meaning of the statute, there can be no question but that the determination of withdrawal liability made by the Plan is erroneous, without regard to whether the mere closure of the two remaining stores constituted a "complete withdrawal" from the Plan within the definition of the phrase in Section 1383(a).[2] This for the reason that plaintiff's determination was based on the inclusion of the two stores at which all covered operations had permanently ceased before April 29, 1980.
Neither an arbitrator nor the trustees of a pension plan are authorized to interpret or construe a federal statute. The interpretation of a federal statute is a matter reserved for the federal courts. Northwest Airlines, Inc. v. Air Line Association, 442 F.2d 251, 255 (8 Cir.1971). An arbitrator decides issues of fact. He may construe a contract but not the meaning of a statute. Hence, insofar as concerns the two stores closed prior to April 29, 1980, liability vel non is initially dependent upon the interpretation of the term "facility."
Section 1397(a)(2), as distinguished from (a)(1), contains no reference to one or more collective bargaining agreements. Subsection (a)(1) of Section 1397 pertains to work performed "under a collective bargaining agreement for which there was a permanent cessation of the obligation to contribute before April 29, 1980." Whatever the meaning to be attributed to this language, neither party takes the position that it is applicable to this case. On the other hand, Subsection (a)(2), which is in the alternative, pertains "to work performed at a facility at which all covered operations permanently ceased before April 29, 1980), or for which there was a permanent cessation of the obligation to contribute before that date."
In our judgment each of the two stores operated by Del Monte was a "facility." Unquestionably, all covered operations had permanently ceased prior to April 29, 1980 at the two stores in question. So, too, by reason of their closure and the termination of the employment of the personnel, there was a permanent cessation of Del Monte's obligation to contribute with respect thereto. Cf. Matter of Food Fair, Inc., Bkrtcy. 14 B.R. 40 (1981).
Inasmuch as an arbitrator could not interpret Section 1397, a request for arbitration of the $163,800 assessment based on the inclusion of the two earlier closed stores would serve no purpose. The arbitrator could not grant Del Monte the relief to which it was entitled except by usurping the judicial function of construing the statute, even assuming he chose to do so. Moreover, even if arbitration is requested, an employer is nevertheless required by the statute (29 U.S.C. § 1401(d)) to make the withdrawal liability payments in accordance *30 with the schedule set forth in the trustees' demand for payment, pending the final determination by the arbitrator or to be held in default.
It would be manifestly unfair, to say the least, to require Del Monte to pay in accordance with the Trustees' schedule of payments whether or not arbitration was requested, where, as here, both the determination of the total amount and the schedule of payments are invalid as a matter of law.
The only assessment which Del Monte could contest in this suit is the one for $163,800. We have no authority to reassess its liability, if any. On the other hand, if in fact Del Monte is subject to a complete withdrawal liability, we should not foreclose the trustees from making another determination thereof if they should now see fit to do so. Among the issues to be determined de novo in the first instance by the trustees is whether in light of all the facts which have developed since the initial decision, the "complete withdrawal" by the closure of the two remaining stores was in fact "permanent."
It follows from the foregoing that plaintiff's motion for summary judgment should be and it is hereby overruled. On defendant's motion for summary judgment, judgment will be entered setting aside and vacating the assessment of $163,800 as the withdrawal liability of Del Monte Supermarkets, Inc. without prejudice to the right of the trustees to make a new determination in accordance herewith as to whether Del Monte is subject to a complete withdrawal liability, and if so, as to the amount thereof and the method of calculation. If such new determination is made, defendant will have the right accorded to it by statute to request a review and if necessary to resort to arbitration.
NOTES
[1] We are not advised whether the "single bargaining agreement" referred to is the one in force when the complete withdrawal determination was made (in which case only three stores were operating or the earlier one covering four stores. On the latter premise, it is conceivable that there might have been other (earlier) agreements covering more or less stores.
[2] A "complete withdrawal" occurs when the employer either (1) permanently ceases to have an obligation to contribute under the plan" or (2) "permanently ceases all covered operations under the plan." Clearly, since the 1979 collective bargaining agreement was still in effect until the end of 1982, the "obligation" to contribute had not ceased. It is equally clear that Del Monte had "ceased all covered operations" as of April 24, 1981, but not necessarily "permanently", an issue as to which we express no opinion. The distinction is between the date of a cessation of covered operations (See Section 1383(e)) and the "permanency" thereof.