**BOARD OF TRUSTEES OF the WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Plaintiff,**

v.

**H.F. JOHNSON and Midland Terminal, Inc., Defendant,**

**No. C83–1281M.**

United States District Court,
W.D. Washington.

Feb. 28, 1985.

On Motion for Supplemental Judgment
April 2, 1985.

John H. Binns, Jr., Michael F. Mogan, Seattle, Wash., for plaintiff.

Jon E. Doak, Billings, Mont., for defendant.

## MEMORANDUM AND ORDER

McGOVERN, Chief Judge.

THIS MATTER comes on before the undersigned Judge of the above-entitled court on the parties' cross motions for summary judgment. The Court has considered the pleadings filed by both parties and the remainder of the record.

Plaintiff maintains and administers the Western Conference of Teamsters Pension Plan (the Plan), which is a defined benefit multiemployer pension plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1301 (1982) and the Multi-Employer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§ 1383–1461 (1982). Defendant Johnson is a Montana corporation engaged in the transportation of bulk petroleum.

Under these two Acts, when an employer withdraws from a Plan, it is assessed "withdrawal liability" to cover its pro rata share of the unfunded vested benefit liability. The Plan sends each withdrawing employer a notice and demand for payment of withdrawal liability. 29 U.S.C. § 1382. If the employer wishes to contest the withdrawal liability determination, it must request review within 90 days of notice. § 1399(b)(2)(A). The employer may then

seek arbitration of the review determination within 60 days after (1) the date he receives the review determination or (2) 120 days after he first requests review, whichever is earlier. 29 U.S.C. § 1401(a)(1). If the employer fails to seek arbitration within those time limits, the amount and schedule for payment set forth in the review determination are applicable and the Plan may seek enforcement in Federal court. 29 U.S.C. § 1401(b)(1).

For many years, Johnson had signed successive collective bargaining agreements with the Teamsters. The last contract expired June 30, 1981. Contract negotiations continued until November 1, 1981 when Johnson's employees went on strike. By February 1982 the picket lines were withdrawn and Johnson continued to operate without a contract.

On December 13, 1982, Plaintiff sent Johnson notice and demand for payment of withdrawal liability of approximately $287,000 to be paid in 48 monthly payments. Johnson responded by letters of January 20 and 24, 1983 requesting review of some of the figures. Johnson also stated that these discrepancies were minor compared to the serious financial trouble that would be caused if required to pay the withdrawal liability. Johnson stated that it might be forced into bankruptcy if required to pay.

On June 6, 1983, the Plaintiff sent a response letter to Johnson's letter of January 20. The letter stated that Plaintiff had conducted an audit and recalculated the withdrawal liability determination. The new figures were $302,000 owed over the course of 48 months. Plaintiff also stated that it required documentation of Defendant's ability to pay the withdrawal liability because if it couldn't pay, under ERISA and the Plan's Rules, the whole amount could be due immediately. Finally, Plaintiff stated that this new letter and the accompanying withdrawal liability determination form "supersedes and replaces" the earlier letter and determination form. Plaintiff then demanded the revised amount.

On August 10, Johnson sent a letter to Plaintiff asking review as to: (1) why the liability began in November 1981 when Defendant's employees were still on strike; (2) why the "trucking industry exception" of 29 U.S.C. § 1383(d) did not apply; and (3) whether payments could be spread out over 100 months. On August 29, Plaintiff sent a letter to Defendant stating that Defendant was in default and accelerated the payments. Defendant responded by letter of September 1 asking why Plaintiff had ignored its August 10 letter. On September 9, Plaintiff filed this suit to enforce the determination.

The cross motions for summary judgment revolve around one central issue. Defendant contends that the June 6 notice constituted a new and separate notice and demand and therefore began again the time limit in which to seek review and arbitration pursuant to § 1401(a). In support of its claim, Defendant notes that the June 6 letter contained all of the requisites of a notice and demand under § 1399(b); it contained a different withdrawal liability amount than the December 13 notice, a different schedule of payments, a different date for commencement of payments, and it moved the site for arbitration from Denver to Seattle. Moreover, the letter stated that the June 6 determinations form superseded and replaced the December 13 form. Finally, the June 6 letter specifically "demanded" the revised amount pursuant to § 1399(b)(1)(B).

While the MPPAA is silent regarding successive or multiple demands for payment and there is no guiding case law, it is apparent that the June 6 letter did not constitute a new demand. Section 1399(b)(2)(B)(iii) provides that after an employer requests review of a withdrawal liability determination, the plan sponsor shall notify the employer of "the reason for any change in the determination of the employer's liability or schedule of payments." The MPPAA thus contemplates that the Plan may change the determination after review. Executing such a change does not create an entirely new demand. The June

6 letter was nothing more than notice of a change pursuant to § 1399(b)(2)(B)(iii) and did not constitute an entirely new determination.

Moreover, the fact that the "determinations form" was "superseded and replaced" is of no significance. The "determinations form" is not required by the MPPAA. It is simply a form provided by the Plaintiff in this case to its withdrawing employers to aid them in understanding the Plan's computations. Indeed, the fact that the old one was superseded and replaced merely stated the obvious. Upon Defendant's request for review, Plaintiff altered the amount of withdrawal liability and the new form was simply a reflection of that change pursuant to § 1399(b)(2)(B)(iii).

■ Finally, the June 6 letter clearly states that it is a "reply" to Defendant's January 20 and 24 "[request] for review." The letter expressly states that "After reasonable review, the Fund's findings with respect to the matters set forth in your letter are as follows...." Any confusion caused by the Plan's "demand" under the June 6 letter is insignificant when compared to the entirely plain statement establishing the letter as a response to Defendant's request for review. Summary judgment in favor of Plaintiff is appropriate in light of Defendant's failure to institute arbitration within the time limits prescribed by the MPPAA.

The other major issue presented by Defendant in its motion concerns the date upon which the withdrawal liability arose. Under 29 U.S.C. § 1383(a)(1) a withdrawal occurs when the employer permanently ceases to have an obligation to contribute to the plan. Plaintiff contends that Defendant withdrew on November 1, 1981 when Defendant's employees went on strike. Defendant contends, on the other hand, that the withdrawal was not permanent until the strike terminated in February of 1982. If Defendant's withdrawal was not permanent until February, then Plaintiff's notice and demand for withdrawal liability incorporated the wrong starting date.

■ This issue, however, is moot since Defendant failed to initiate arbitration within the time limit. Section 1401(a)(1) states that "any dispute ... concerning a determination ... shall be resolved through arbitration." Section 1401 goes on to require an employer to initiate arbitration within 60 days after the employer receives the Plan's review determination or within 120 days after review is first requested, whichever is earlier. Whether a labor dispute existed and when the withdrawal liability arose are issues subject to arbitration. Defendant is precluded from litigating these claims now in light of its failure to initiate mandatory arbitration.

Therefore, it is hereby ORDERED:

(1) Plaintiff's Motion for Summary Judgment is GRANTED;

(2) Defendant's Motion for Summary Judgment is DENIED; and

(3) The Clerk of the Court shall direct uncertified copies of this Order to counsel of record.

## ON MOTION FOR SUPPLEMENTAL JUDGMENT

This matter having come on for consideration before the Court, Honorable Walter T. McGovern, United States District Judge, presiding, upon plaintiff's motion for a supplemental judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, and the issues having been duly considered and a decision having been duly rendered,

IT IS HEREBY ORDERED AND ADJUDGED that defendants H.F. Johnson, Inc. and Midland Terminal, Inc., as joint and several obligers, pay to plaintiff the following:

(1) $302,194.76 as withdrawal liability;

(2) $56,999.98 as interest through February 28, 1985, plus $93.68 per day thereafter until payment of the withdrawal liability;

(3) $60,438.95 as liquidated damages;

(4) $10,291.30 as plaintiff's attorneys' fees; and

(5) $725.62 as plaintiff's costs and disbursements.