Loran W. ROBBINS, et al., Plaintiffs,

v.

CHIPMAN TRUCKING INC., a Delaware corporation, Defendant.

No. 85 C 1489.

United States District Court, N.D. Illinois, E.D.

Dec. 8, 1986.

---

Terence G. Craig, Bruce Perlin, Central States Law Dept., Chicago, Ill., for plaintiffs.

Sherman Carmell, Carmell, Charone & Widmer, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION ON MOTION TO ALTER OR AMEND JUDGMENT

GRADY, Chief Judge.

This case is before us on the motion of plaintiffs, the individual trustees of the Central States Southeast and Southwest Areas Pension Fund (the "Trustees") to alter or amend our memorandum opinion and judgment of June 24, 1986. In that opinion, we held that defendant Chipman Trucking, Inc. ("Chipman") was not barred by its failure to seek arbitration from raising certain defenses to its alleged withdrawal liability. We then considered and rejected those defenses and held for the Trustees, granting them the withdrawal liability sum they sought, as well as attorney's fees, costs, and liquidated damages. We instructed them to file a petition for the

latter three amounts, and we indicated that we would enter final judgment when those items have been determined. The Trustees then filed this motion to alter or amend the judgment, arguing that we erred in holding that Chipman was not barred from raising defenses to its withdrawal liability. We gave the parties an opportunity to further brief the issue. After further review, we now believe the Trustees are correct, and for the reasons stated below, their motion is granted.

## FACTS AND PROCEDURAL HISTORY

The pertinent facts and procedural history, as stated in our previous opinion, are as follows:

The Plan is a multi-employer pension plan governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., as amended by the Multi–Employer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381 et seq. Pursuant to a contract, Chipman, a trucking operation located in Kankakee, Illinois, acted as a cartage agent for Preston Trucking Co. ("Preston") and Preston's predecessor, apparently carrying and delivering shipments for Preston in the Kankakee area. Chipman and Preston were both signatories to a collective bargaining agreement (the "Agreement") between trucking employers and Teamsters Local Union 705, requiring employers to make contributions to the Plan whenever their drivers worked under the Agreement. Plaintiff's Complaint ¶ 6. Chipman's drivers were subject to Preston's complete direction and control but were paid by Chipman. Defendants' Cross–Motion for Summary Judgment ("Defendant's Motion"), Affid. of Kenneth Chipman ("Chipman Affid.") at ¶ 3. Throughout the duration of its agency relationship with Preston, Chipman contributed to the Plan when its drivers worked pursuant to the terms of the Agreement.

Preston terminated its agency contract with Chipman on May 26, 1984. Chipman Affid. at ¶ 6. Preston immediately placed Chipman's former drivers on Pres-

ton's payroll, backdated the drivers' seniority to the time that Chipman's relationship with Preston's predecessor began, and started making contributions to the Plan when those drivers worked under the Agreement. *Id.*

Following the termination of the agency relationship, the Plan determined that Chipman had ceased to have an obligation to contribute to the Plan and had exercised a "complete withdrawal" under MPPAA. On February 1, 1984, the Plan notified Chipman that it had "withdrawal liability" in the amount of $181,261.58 and demanded payment. Chipman did not forward any payment and received a past-due notice on March 1, 1984. The past-due notice warned Chipman that its failure to pay could result in a statutory default. On either April 9 or May 8, 1984, Chipman requested a review of the withdrawal liability determination. In a letter to the Plan, Chipman's attorney argued that Chipman had not completely withdrawn from the Plan because Chipman and Preston were a "joint employer" during their agency relationship and, following termination of that relationship, Preston contributed to the Plan when Chipman's former drivers worked under the Agreement directly for Preston. In a letter which Chipman's attorney received on September 26, 1984, the Trustees rejected Chipman's arguments on review. Chipman did not attempt to invoke arbitration until February 19, 1985, at which time its attorney wrote to the Plan, requested a personal appearance before the Trustees, and stated that "[i]n order to preserve [Chipman's] statutory right, this letter shall serve as Chipman's alternative and conditional request for arbitration...." Defendant's Motion, Affid. of Sherman Carmell, Exh. K. Three days later, Chipman's attorney wrote to the American Arbitration Association ("AAA") stating that Chipman had made a "conditional request for arbitration of the complete withdrawal assessment" and apparently enclosed a $500.00 check for the arbitration filing fee. Defendant's Motion, Exh. L. The Plan responded with two more letters, on March 1, 1985, and another on July 29, 1985, again rejecting Chipman's arguments and stating that Chipman's right to arbitration had expired before February 1985, and that its withdrawal liability was due and owing.

*Robbins v. Chipman Trucking Co.*, No. 85 C 1489, Memorandum Op. at 1–3 (N.D.Ill. June 24, 1986) (Grady, J.) (footnotes omitted) [available on WESTLAW, 1986 WL 7334].

## DISCUSSION
### Statutory Scheme

The MPPAA imposes withdrawal liability on any employer who withdraws from a multiemployer pension plan. 29 U.S.C. § 1381. A withdrawal occurs whenever an employer permanently ceases to have an obligation to contribute under a plan or when an employer permanently ceases all covered operations under a plan. 29 U.S.C. § 1383(a). The amount of an employer's withdrawal liability is determined by a plan's trustees, who must show that the employer was obligated to contribute to the plan under a collective bargaining agreement and that the employer has withdrawn from the plan. 29 U.S.C. §§ 1382, 1392(a). The amount of the withdrawal liability is determined according to a formula provided in 29 U.S.C. §§ 1381(b) and 1391. Once the employer's withdrawal liability is determined, the employer must be notified and the plan must make a demand for payment. 29 U.S.C. §§ 1382, 1399(b)(1).

Once notified, if the employer objects to the withdrawal liability determination, the employer may within 90 days request the plan to review "any specific matter relating to the determination of the employer's liability and the schedule of payments...." Once the plan completes a "reasonable review" of the matter, it must notify the employer of its decision and the underlying reasons. *Id.*

If the employer disagrees with the plan's review, the employer is required to submit to arbitration "[a]ny dispute between [itself] and the plan ... concerning a determination made under sections 1381 through 1399 of this title...." 29 U.S.C.

§ 1401(a)(1). A request for arbitration must be made within 180 days after the employer's request for review or 60 days after the employer is notified of the plan's review decision, whichever is earlier. *Id.* [1] If arbitration is not initiated within the statutory time frame, "the amounts demanded by the plan sponsor ... shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1). "The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." *Id.*

This action is a collection suit brought by the Trustees pursuant to the above provision. We have already found in our earlier opinion that Chipman did not timely file an arbitration demand. *Robbins v. Chipman,* Memorandum Op. at 6–7. We now reconsider whether its failure to do so places it in automatic default and bars it from raising any defenses in this subsequent court proceeding to collect the withdrawal liability.

### The Conflicting Case Law

The Trustees contend that because Chipman failed to seek arbitration, Chipman's liability is established as a matter of law, and Chipman is barred from further litigating the issue of its liability. Chipman responds that arbitration is not a jurisdictional prerequisite to judicial resolution of a dispute under the statute, and that because its defense to withdrawal liability presents an issue of statutory interpretation (based on undisputed facts), it may present it directly to the court without exhausting the arbitration requirement. Several courts have addressed the question of whether issues of statutory interpretation must be presented first to the arbitrator under the MPPAA, and there is a clear split of authority, which we now outline in detail.

### The Waiver Cases

About half the courts that have considered the issue have held that a failure to initiate arbitration under the MPPAA is an absolute bar to contesting withdrawal liability in federal court.[2] In reaching this result, these courts have interpreted the arbitration requirement broadly to cover all disputes involving "the establishment or amount of withdrawal liability." *See Combs v. Bowling & Hildebrand Trucking Co.,* No. 84–1451, Order at 8 (D.D.C. March

---

**1.** Although an employer may pursue arbitration and, in turn, seek judicial review of the arbitrator's decision, the employer must make payments under the schedule determined by the Plan "beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability...." 29 U.S.C. § 1399(c)(2).

**2.** *I.A.M. National Pension Fund Plan A v. Cullman Industries, Inc.,* 640 F.Supp. 1284, 1289–90 (D.D.C.1986); *I.A.M. National Pension Fund Plan A v. Clinton Engines Corp.,* No. 85–2877, Memorandum at 2–7 (D.D.C. Apr. 28, 1986); *I.A.M. National Pension Fund Plan A v. Towner Manufacturing Co.,* No. 85–777, Memorandum Op. at 7–11 (D.D.C. Mar. 13, 1986) [available on WESTLAW, 1986 WL 11388]; *Debreceni v. George Lamoureux & Co.,* 629 F.Supp. 598, 602 & n. 1 (D.Mass.1986); *Combs v. Harold,* No. 84–1789, Memorandum Op. at 6–10 (D.D.C. Feb. 19, 1986) [available on WESTLAW, 1986 WL 15626]; *Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. Salt Creek Terminals, Inc.,* No. C85–2270R, Order at 9–10 (W.D.Wash. Feb. 6, 1986); *Connors v. B.M.C. Coal Co.,* 634 F.Supp. 74, 75 (D.D.C.1986); *Grand Union Co. v. Food Employers/UFCW Pension Fund,* 6 E.B.C. 2531, 2532–34 (D.D.C.1985) [available on WESTLAW, 1985 WL 6072]; *Robbins v. B & B Lines, Inc.,* No. 84 C 4652, Memo-

randum Op. and Order at 5–8 (N.D.Ill. Sept. 5, 1985) (Rovner, J.) [available on WESTLAW, 1985 WL 2465]; *Combs v. Bowling & Hildebrand Trucking Co.,* No. 84–1451, Order at 7–10 (D.D.C. Mar. 26, 1985); *Board of Trustees of the Western Conference of Teamsters Pension Fund v. Johnson,* 606 F.Supp. 231, 234 (W.D.Wash. 1985); *Robbins v. Waverly Transfer Co. Inc.,* No. 83 C 6281, Memorandum and Order at 7–9 (N.D. Ill. Jan. 21, 1985) (Moran, J.) [available on WESTLAW, 1985 WL 88]; *Combs v. Adkins & Adkins Coal Co.,* 597 F.Supp. 122, 126–27 (D.D.C.1984); *Combs v. Pelbro Fuel, Inc.,* No. 83–1524, Memorandum Op. at 10–16 (D.D.C. Nov. 15, 1984) [available on WESTLAW, 1984 WL 3230]; *Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. North Kitsap Gravel & Asphalt Co.,* No. C84–176C, Order at 6–11 (W.D.Wash. Oct. 16, 1984); *Trustees of Western Teamsters Pension Fund v. Parsons,* 5 E.B.C. 2277, 2279–80 (W.D.Wash.1984) [available on WESTLAW, 1984 WL 14137]; *Trustees of Western Teamsters Pension Fund v. Arizona Pacific Tank Lines,* 4 E.B.C. 2355, 2356–57 (N.D. Cal.1983); *Speckmann v. Paddock Chrysler Plymouth, Inc.,* 565 F.Supp. 469, 473 n. 2 (E.D. Mo.1983); *Board of Trustees of Western Conference of Teamsters Pension Fund v. Ceazan,* 559 F.Supp. 1210, 1218 (N.D.Cal.1983).

26, 1985); *Combs v. Adkins & Adkins,* 597 F.Supp. 122, 127 (D.D.C.1984). This interpretation is supported by the statutory language, which does not exclude questions of statutory interpretation from the arbitrator's jurisdiction. Section 1401(a)(1) states: "Any dispute ... concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." *See id.*

In our earlier opinion, we stated that "only where there have been factual disputes have courts held that the exhaustion doctrine bars the claims or defenses of employers who have not submitted to arbitration." *Robbins v. Chipman,* Memorandum Op. at 8. It is true that some of these courts have emphasized that because defendant raised a defense requiring a *factual* determination, arbitration was required, and the defendant therefore waived its defense. *See e.g., Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. Salt Creek Terminals, Inc.,* No. C85–227OR, Order at 9–10 (W.D. Wash. Feb. 6, 1986); *Grand Union Co. v. Food Employers/UFCW Pension Fund,* 6 E.B.C. 2531, 2532–34 (D.D.C.1985) [available on WESTLAW, 1985 WL 6072]; *Trustees of Western Teamsters Pension Fund v. Parsons,* 5 E.B.C. 2277, 2280 (W.D.Wash.1984) [available on WESTLAW, 1984 WL 14137]. *See also I.A.M. National Pension Fund v. Schulze Tool & Die Co.,* 564 F.Supp. 1285, 1294 (N.D.Cal.1983). Furthermore, these courts stated in dicta or otherwise implied that questions of statutory construction would not require arbitration. *Id.*

However, a number of these "waiver" courts have specifically considered and rejected Chipman's argument that issues of statutory interpretation need not be submitted to arbitration. In *Bowling & Hildebrand,* the employer's defense was that even though it had performed covered operations, the one making the contribution should have been held responsible for the withdrawal liability. The court held that this was an issue that must first be submitted to arbitration. The court stated,

> Whether withdrawal liability falls upon the party performing covered operations

or on one allegedly making contributions on its behalf is clearly a "dispute involving 'the establishment ... of withdrawal liability.'" In such matters, the arbitrator is an able factfinder, and his or her responsibilities include the interpretation of statutory language of the act as well.

Order at 8.

In *Adkins & Adkins,* the defendant employer maintained that arbitration was not required before it could raise the defense that it was not engaged in a "labor dispute" within the meaning of the MPPAA. The defendant argued that because there was a question of statutory interpretation, this issue was not subject to review through arbitration. In response to that argument, the court concluded,

> The requirement of arbitration broadly covers disputes involving "the establishment or amount of withdrawal liability...." The Act delegates "factfinding functions to administrative-type bodies," and an arbitrator's responsibilities include the interpretation of the statutory language of the Act.

597 F.Supp. at 127 (citations omitted). This passage was quoted and relied on by the courts in *I.A.M. National Pension Fund Plan A v. Towner Manufacturing Co.,* No. 85–777, Memorandum Op. at 10 (D.D.C. Feb. 19, 1986), and *Combs v. Harold,* No. 84–1789, Memorandum Op. at 9–10 (D.D.C. Mar. 13, 1986), to reach the same result.

Furthermore, whether the issue is truly one of statutory interpretation or of fact is a question that cannot always be determined until the arbitrator or the court considers it. Because of this problem, these courts have held that Congress's preference that employers first seek arbitration should control. For example, in *I.A.M. National Pension Fund Plan A v. Clinton Engines Corp.,* No. 85–2877, Memorandum (D.D.C. Apr. 28, 1986), the court rejected the defendant employer's claim that the issue it raised was one of statutory interpretation. The court stated that a question that is "'purely one of statutory interpretation'" is extremely rare in an ERISA case. *Id.* at 5. The court noted that the dispute

in that action "requires a factual determination of how and when defendant withdrew from the Plan before any theoretical question of statutory interpretation can be reached," *id.,* and the court concluded, "Thus, the mere fact that defendant claims that its defense involves a question of statutory interpretation does not remove its obligation first to pursue arbitration." *Id.* at 6. *See also Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund,* 718 F.2d 628, 635 (4th Cir.1983) ("nice [mixed] question of fact and law" to be decided by an arbitrator), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). Finally, the court in *Combs v. Pelbro Fuel, Inc.,* No. 83–1524, Memorandum Op. at 14 (D.D.C. Nov. 15, 1984) [available on WESTLAW, 1984 WL 3230], emphasized this point even further:

> [Congress] has devised an elaborate statutory scheme for resolving disputes that may arise over the determination and the amount of withdrawal liability. To permit an employer to stylize his claim into a question of law and thereby bypass this framework would surely frustrate the intent of Congress and should not be sanctioned by the courts.

Therefore, while it is true that some of these cases bar defendants from raising factual disputes they have not first brought to arbitration, others bar defendants from raising questions of statutory interpretation as well.

### The Non–Waiver Cases

An almost equal number of courts, however, have held that under certain circumstances, exhaustion of the arbitration remedy is not an absolute bar, but rather is a prudential matter within the court's discretion.[3] Many of these cases, however, can be distinguished from the waiver cases in at least one of two ways.

First, in many of them, the arbitration remedy was still available, and the court was faced with two available fora. The question was therefore whether arbitrable issues before the court should be decided or referred back to arbitration, not whether failure to seek arbitration waived the right to raise the defenses in court. For example, in *I.A.M. National Pension Fund Benefit Plan C v. Stockton Tri,* 727 F.2d 1204 (D.C.Cir.1984), the defendant employer had timely sought arbitration. It was the plaintiff plan that resisted arbitration and filed suit against defendant, contending that even if defendant was entitled to arbitrate, plaintiff still had a right to immediate payment. Presented with a choice of fora, the court decided that exhaustion of yet available arbitration proceedings was not required. *Id.* at 1207–1210.[4]

**3.** *Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund of Philadelphia and Vicinity,* 787 F.2d 897, 902–03 (3d Cir.1986); *T.I.M.E.–DC, Inc. v. Management–Labor Welfare & Pension Funds of Local 1730 ILA,* 756 F.2d 939, 945 (2d Cir.1985); *T.I.M.E.–DC, Inc. v. New York State Teamsters Conference Pension & Retirement Fund,* 735 F.2d 60 (2d Cir.) (per curiam), *aff'g,* 580 F.Supp. 621, 623 (N.D.N.Y.1984); *I.A. M. National Pension Fund Benefit Plan C v. Stockton Tri Industries,* 727 F.2d 1204, 1207–10 (D.C.Cir.1984); *Republic Industries, Inc. v. Teamsters Joint Council No. 83 Pension Fund,* 718 F.2d 628, 634 (4th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); *Shelter Framing Corp. v. Pension Benefit Guaranty Corp.,* 705 F.2d 1502, 1509 (9th Cir. 1983), *rev'd on other grounds sub nom. Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984); *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290, 294 (3d Cir.1982); *I.A.M. National Pension Fund Benefit Plan A v. Cooper Industries,* No. 84–3346 (D.D.C. June 28, 1986); *United Paperworkers Pension Plan v. Arlington Sample Book Co.,* 5 E.B.C. 1948, 1950, 1951 (E.D.Pa.1984) [available on WESTLAW, 1984 WL 6625]; *F.H. Cobb Co. v. New York State Teamsters Conference,* 584 F.Supp. 1181, 1183 N.D.N.Y.1984); *Refined Sugars, Inc. v. Local 807 Labor–Management Pension Fund,* 580 F.Supp. 1457, 1460–61 (S.D.N.Y. 1984); *Sunstar Foods, Inc. v. United Food & Commercial Workers Pension Fund,* 5 E.B.C. 1349, 1351, 1352 (D.Minn.1984) [available on WESTLAW, 1984 WL 3288]; *Meatcutters Union Local No. 88 v. Del Monte Supermarkets, Inc.,* 565 F.Supp. 27, 29 (E.D.Mo.1983); *I.A.M. National Pension Fund v. Schulze Tool & Die Co.,* 564 F.Supp. 1285, 1294 (N.D.Cal.1983); *T.I.M. E.–DC, Inc. v. Trucking Employees of North Jersey Welfare Fund,* 560 F.Supp. 294, 301–03 (E.D. N.Y.1983).

**4.** Contributing to this decision may have been the fact that by that point, the case had been briefed and decided at the district court level and had been rebriefed and presented to the court of appeals. *See Stockton Tri,* 727 F.2d at 1210. *See also Grand Union,* 6 E.B.C. at 2534.

Another way in which defendants have kept their arbitration remedy available is by bringing suits themselves seeking declarations of non-liability, thereby tolling the limitations period. *See Terson Co. v. Pension Benefit Guaranty Corp.*, 565 F.Supp. 203, 207 (N.D.Ill.1982). For example, in *Shelter Framing Corp. v. Pension Benefit Guaranty Corp.*, 705 F.2d 1502 (9th Cir. 1983), *rev'd on other grounds sub. nom. Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), the employer brought suit in district court before the time for requesting arbitration had expired. *Id.* at 1506–07. The court held that faced with a choice of fora, it could still properly decide a constitutional challenge to the MPPAA without first sending the case back to arbitration. *Id.* at 1509. Other cases in which the defendant employer had brought suit in federal court prior to the arbitration deadline, thereby tolling the limitations period, include: *T.I.M.E.–DC, Inc. v. Management–Labor Welfare & Pension Funds of Local 1730 ILA*, 756 F.2d 939, 943, 944–45 (2d Cir.1985) (issues outside scope of arbitration requirement could be decided first by the court, but issues within scope would then be remanded to arbitration); *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 292 (3d Cir. 1982); *F.H. Cobb Co. v. New York State Teamsters Conference*, 584 F.Supp. 1181, 1182 (N.D.N.Y.1984); *Terson Co. v. Pension Guaranty Benefits Corp.*, 3 E.B.C. 2372, 2374 (N.D.Ill.1984) (where arbitration still available, parties to proceed there first). *See also Schulze Tool & Die*, 564 F.Supp. at 1288–89, 1294 (although one of the issues in the case was when did time to arbitrate expire, court implicitly considered arbitration still available).

Second, a number of these cases dealt with facial challenges to the constitutionality of the MPPAA. These courts held that because arbitration could neither moot the constitutional issues nor develop a better record for their resolution, exhaustion of the arbitration remedy would not be required as a prerequisite to a judicial determination. *See Teamsters Joint Council*, 718 F.2d at 623; *Shelter Framing*, 705 F.2d at 1509; *Republic Industries*, 693 F.2d at 294. *See also Stockton Tri*, 727 F.2d at 1210 & n. 18 (factual and statutory issues not remanded to arbitration in part because the court would still have to consider defendant's constitutional challenge to the Act). However, even these cases that held arbitration was not required prior to consideration of constitutional issues have stated that issues falling within sections 1381 and 1399 must be arbitrated. *Teamsters Joint Council*, 718 F.2d at 634–35; *Republic Industries*, 693 F.2d at 294–95. *See also Management–Labor*, 756 F.2d at 945.

Nevertheless, although many of these cases can be distinguished on these two bases,[5] others have simply held that a defendant need not seek arbitration of a question of law or of statutory interpretation. In excusing the arbitration requirement on this basis, the courts' reasoning has varied considerably and has included the following conclusions. "An arbitrator ... [is not] authorized to interpret or construe a federal statute." *Meatcutters Union Local No. 88 v. Del Monte Supermarkets, Inc.*, 565 F.Supp. 27, 29 (E.D.Mo. 1983); *see also United Paperworkers Pension Plan v. Arlington Sample Book Co.*, 5 E.B.C. 1948, 1951 (E.D.Pa.1984) [available on WESTLAW, 1984 WL 6625]. "[I]n the absence of clear statutory intention, the issue [of law] should not be decided by arbitration." *Refined Sugars, Inc. v. Local 807 Labor–Management Pension Fund*, 580 F.Supp. 1457, 1461 (S.D.N.Y. 1984). "The [exhaustion] doctrine is inapplicable when the issues presented to the court revolve around statutory interpretation." *T.I.M.E.–DC, Inc. v. Trucking Employees of North Jersey Welfare Fund*, 560 F.Supp. 294, 303 (E.D.N.Y.1983); *T.I. M.E.–DC, Inc. v. New York State Team-*

---

5. We are by no means the first court to distinguish these cases on these bases. *See Cullman Industries*, Opinion at 11–12; *Clinton Engines*, Memorandum at 5–6; *Towner Manufacturing*, Memorandum Op at 8 n. *; *Bowling & Hildebrand*, Order at 9; *Grand Union*, 6 E.B.C. 2532–34; *Connors*, 634 F.Supp. at 75.

sters Conference Pension & Retirement Fund, 580 F.Supp. 621, 633 (N.D.N.Y.1984) (both citing Touche Ross & Co. v. S.E.C., 609 F.2d 570, 576–77 (2d Cir.1979)). "[A]n interpretation of a federal statute [is] more suitably met in a federal court than in arbitration." Schulze Tool & Die, 564 F.Supp. at 1294. "[T]he court would owe no deference to an arbitrator's application of the law to the facts." Sunstar Foods, Inc. v. United Food & Commercial Workers Pension Fund, 5 E.B.C. 1349, 1352 (D.Minn.1984) [available on WESTLAW, 1984 WL 3288]; see also Management–Labor, 756 F.2d at 945; Stockton Tri, 727 F.2d at 1210. "The arbitral process would serve no useful function." North Jersey, 560 F.Supp. at 303; see also Schulze Tool & Die, 564 F.Supp. at 1294; Sunstar Foods, 5 E.B.C. at 1950.

Although these rationales for the "statutory interpretation" exception have varied, the courts are in agreement and have emphasized that the exception stems from "an underlying perception that arbitrators ... need not be resorted to when there is 'no need for ... expertise or the exercise of ... discretion.' " New York State Teamsters, 580 F.Supp. at 633; North Jersey, 560 F.Supp. at 302 (both quoting Touche Ross, 609 F.2d at 577). See also e.g., United Paperworkers, 5 E.B.C. at 1950; Schulze Tool & Die, 564 F.Supp. at 1294. Therefore, where there were no questions of fact and no issues of contract interpretation to resolve, resort to arbitration was not required, and failure to resort to it was excused. Id. See also Management Labor, 756 F.2d at 945; Stockton Tri, 727 F.2d at 1210, Shelter Framing, 705 F.2d at 1509.

## Adopting the Waiver View

Having set forth the conflict, we now adopt the rule of the waiver cases that by failing to seek arbitration, a party forfeits its opportunity to raise defenses to the existence or amount of its withdrawal liability, even a defense based solely on statutory interpretation. We do so for the same three reasons that underly resort to arbitration as a general matter. These reasons are set forth by both the "waiver" courts,

requiring arbitration, and the "non-waiver" courts, excusing it, as well as in our previous opinion.

First, in establishing the arbitrative scheme, Congress has expressed a clear preference for initial dispute resolution in a non-judicial forum. Robbins v. Chipman, Memorandum Op. at 8; Stockton Tri, 727 F.2d at 1208; Republic Industries, 693 F.2d at 293–94; Schulze Tool & Die, 564 F.Supp. at 1290. Second, an arbitrator skilled in pension and labor matters, like an agency in a given administrative area, is in theory likely to fashion superior resolutions of disputes within the arbitrator's area of expertise. Id. Third, arbitration promotes judicial economy and judicial restraint, both because the arbitrator's decision may dispose of the suit, and even if one party appeals the arbitrator's decision, the court will have the benefit of the arbitrator's analysis. Id.

We now expand on each of these reasons to show why the arbitration requirement should apply equally to questions of statutory interpretation.

## Congressional Intent

When Congress enacted ERISA, it was concerned with safeguarding the fiscal health of employee pension funds. Consequently, it included various provisions in the statute designed to prevent employers from jeopardizing the solvency of the funds. These included the presumption that "any determinations made by a plan sponsor under sections 1381 through 1399" were correct, 29 U.S.C. § 1401(a)(3)(A), the requirement that the employer seek arbitration and within a relatively short time, id. § 1401(a)(1), and the requirement that employers make the scheduled payments demanded by pension funds pending the arbitrator's decision. Id. § 1401(d). See Trustees of Western Teamsters Pension Fund v. Arizona–Pacific Tank Lines, 4 E.B.C. 2355, 2357 (N.D.Cal.1983).

We agree with the court in Arizona–Pacific that if courts were to permit defendant employers to bypass the arbitration requirement and delay payments to the fund of the asserted withdrawal liability and then raise affirmative defenses to lia-

bility for the first time in the fund's collection suit, "the solvency of pension funds may thereby be jeopardized and the intent of Congress would be circumvented." *Id.* Similarly, We agree with the statement of Judge Frank J. McGarr of this district that

[t]he court must consider the fact that Congress when it created the statutory scheme ... deemed arbitration as the proper forum for the adjudication of claims arising out of this scheme. We cannot blithely ignore the express intent of Congress. Arbitration, as the statutorily established forum, should be resorted to first....

*Terson Co.,* 565 F.Supp. at 203.

Without a strong reason to the contrary (such as facial constitutional challenges to the Act, *see supra* p. 634), we will not ignore the congressional preference for arbitration. We do not believe the "statutory interpretation" exception is a sufficiently strong reason to excuse arbitration for the reasons that follow.

*Arbitrator's Expertise*

The "Statutory Interpretation" Exception: *McKart, Touche Ross, and Northwest Airlines.* Every court to hold that exhaustion is not required where the issues involved statutory interpretation of the MPPAA has relied on the decisions in *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (*see* Refined Sugars, Schulze Tool & Die, Management–Labor, Stockton Tri); *Touche Ross & Co. v. S.E.C.,* 609 F.2d 570 (2d Cir.1979) (*see* Refined Sugars, North Jersey, New York State Teamsters); and *Northwest Airlines Inc. v. Air Line Pilots Association, International,* 442 F.2d 251 (8th Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 70, 30 L.Ed.2d 116 (1971) (*see* Refined Sugars, Meatcutters Local, United Paperworkers). These courts, however, have not analyzed these three cases, but have simply cited them for the broad proposition that arbitra-

tors may not decide questions of statutory interpretation. We did this ourselves in our original opinion. *See Robbins v. Chipman,* Memorandum Op. at 8. We now believe these three cases do not stand for that overly broad proposition, and more specifically, we believe they do not apply to the legislative scheme established by the MPPAA.

In *McKart,* the Supreme Court extensively discussed the policies that underpin the exhaustion doctrine and its exceptions.[6] The Court emphasized that "the exhaustion doctrine must be tailored to fit the peculiarities of the administrative system Congress has created.... Application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved." 395 U.S. at 195, 193, 89 S.Ct. at 1663, 1662. The Court further noted that because the case before it was a criminal case, the exhaustion doctrine should be invoked cautiously: deprivation of judicial review "should not be tolerated unless the interests underlying the exhaustion rule clearly outweigh the severe burden imposed upon" the party asserting jurisdiction. *Id.* at 197, 89 S.Ct. at 1664. The Court therefore made clear that its opinion was limited to "the circumstances of the present case." *Id.* The Court stated,

The question of whether petitioner is entitled to exemption as a sole surviving son is, as we have seen, solely one of statutory interpretation. The resolution of *that issue* does not require any particular expertise on the part of the appeal board; the proper interpretation is certainly not a matter of discretion. In this sense, the issue is different from many Selective Service classification questions which do involve expertise or the exercise of discretion, both by the local boards and the appeal boards. Petitioner's failure to take his claim through all

---

6. McKart was indicted for failing to submit to induction into the armed forces. At trial, his only defense was that he should have been exempt from military service because he was the "sole surviving son" of a family whose father had been killed in action while serving in the armed forces. The district court held that he could not raise that defense because he had failed to exhaust administrative remedies provided by the Selective Service System. McKart was convicted and sentenced to three years' imprisonment, and the court of appeals affirmed.

available administrative appeals only deprived the Selective Service System of the opportunity of having its appellate boards resolve a question of statutory interpretation. Since judicial review would not be significantly aided by an *additional* administrative decision of this sort, we cannot see any compelling reason why petitioner's failure to appeal should bar his only defense to a criminal prosecution.

*Id.* at 197–99, 89 S.Ct. at 1665 (footnotes omitted) (emphasis added).

Clearly, the Court did not hold that issues of statutory interpretation need never be raised before the appropriate agency or arbitrator. To the contrary, the Court suggested that issues that may involve expertise or discretion are appropriately raised there. Indeed, subsequently, in *McGee v. United States*, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), the Court held that the selective service board's expertise was needed to determine whether a person could claim exemption as a conscientious objector; failure to appeal to the board therefore barred raising the claim in court. *See id.* at 484–86, 91 S.Ct. at 1568–70.

Furthermore, the Court was influenced by the fact that the appeal in *McKart* would have simply engendered an "additional" administrative decision by the same agency on the same question. That is very different than under the MPPAA, where the original decision and computation is made by the benefitting fund, and the first level of appeal is to the arbitrator. The question we must consider after *McKart* is whether the interests underlying the exhaustion rule clearly outweigh the severe burden placed on defendant under the MPPAA.

Similarly, in *Touche Ross*, the S.E.C. instituted an administrative proceeding against Touche Ross for unethical and fraudulent conduct. Instead of submitting to the proceeding, Touche Ross sought a declaration and an injunction against the proceeding on the ground that the S.E.C.

was acting "without any statutory authority." The S.E.C. moved to dismiss the complaint on the ground that Touche Ross had failed to exhaust administrative remedies. The district court granted the motion, but the court of appeals reversed on the question of exhaustion.[7] The court noted that the question of whether the S.E.C. had statutory authority to undertake such administrative proceedings "is one of purely statutory interpretation." The Court held,

> Further agency action is unnecessary to enable us to determine the validity of Rule 2(e) [regarding such administrative proceedings]. There is no need for the exercise of discretion on the part of the agency nor for the application of agency expertise. While the Commission has the power to declare its own rule invalid, it is unlikely that further proceedings would produce such a result.

The instant case is not a situation in which the arbitrator would be declaring a rule invalid or determining its own authority, and the specific holding of *Touche Ross* is therefore inapplicable.

Finally, in *Northwest Airlines*, an employer sought arbitration on the question of whether a union's instructing its members to honor the picket lines of a sister union was in violation of the no-strike provisions of their collective bargaining agreement. The union took the position that the arbitration board did not have jurisdiction, and the employer then sought an injunction against the union. The district court held that the arbitrator did not have jurisdiction; denied the injunctive relief sought; and set the case for trial. The employer appealed, and the court of appeals reversed, sending the question to arbitration. 442 F.2d 246, 249.

On rehearing in the court of appeals, during which the arbitration was stayed, the court reconsidered the trial court's previous conclusion that the no-strike clause was actually mandated by a statutory provision which was not appropriate for interpretation by an arbitrator. Although the

---

7. The court of appeals in fact affirmed the district court's dismissal of the action, but on the merits of the issue whether the S.E.C. had authority to undertake the proceeding. *See Touche Ross*, 609 F.2d at 577–82.

court of appeals agreed that interpretation of federal statutes was not an appropriate function of an arbitrator, it believed the question was actually one of contract interpretation, not statutory interpretation, and was therefore appropriate for the arbitrator. *Id.* at 255. The court of appeals sent the case back to arbitration.

In sum, these three cases do not support the broad conclusion that exhaustion is never required where the issues involved interpretation of the MPPAA. Just as the Court in *McKart* recognized that the exhaustion requirement should not be applied "blindly in every case," 395 U.S. at 201, 89 S.Ct. at 1666; *see also McGee,* 402 U.S. at 485, 91 S.Ct. at 1569, we believe the "statutory interpretation" exception should not be applied blindly in every case. In fact, for the reasons that follow we believe the exception should not be applied at all to the withdrawal liability scheme under the MPPAA.

*Mixed Questions of Law and Fact.* The above analysis presumes that the issue is solely one of statutory interpretation. A serious problem with the statutory interpretation exception, however, is that whether an employer's defense is a question of fact, or of law, or a mixed question of fact and law, is often difficult to discern, and should not be left for the employer itself to decide in the first instance. *See supra* p. 632; *Clinton Engines,* Memorandum at 5–6; *Pelbro Fuel,* Memorandum Op. at 14. As the Seventh Circuit recently stated in *Gekas v. Attorney Registration & Disciplinary Commission,* 793 F.2d 846 (7th Cir.1986), "There is no 'rule or principle that will unerringly distinguish a factual finding from a legal conclusion.' " *Id.* at 850 (quoting *Pullman–Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982)). The court in *Gekas* also relied on the Supreme Court's recent decision in *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), in which Justice O'Connor wrote for the Court,

> [T]he decision to label an issue a "question of law," a "question of fact", or a "mixed question of law and fact" is sometimes as much a matter of allocation [of authority between the primary and secondary decision-makers] as it is of analysis. At least in those instances in which Congress has not spoken and in which the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question.

*Id.* 106 S.Ct. at 451–2 (citation omitted).[8]

Here, Congress *has* spoken, and as we have stated above, nothing in the legislative scheme suggests that even purely legal issues should be excluded from the arbitrator's jurisdiction. *See supra* p. 632. But even if we were to treat the legislative preference for arbitration as silent on the question, we believe that issues such as whether an employer has withdrawn within the meaning of the Act (*see Clinton Engines, Pelbro Fuel* ) or whether it is engaged in a "labor dispute" within the meaning of the Act (*see Salt Creek Terminals, Adkins & Adkins* ), or whether it is a "joint employer" within the meaning of the Act (*see Robbins v. Chipman* ), are all sufficiently mixed questions of law and fact (even when the underlying facts are undisputed), that the arbitrator will often be in a better position than the court to decide the issue in the first instance.

*Judicial Economy*

Finally, defendant argues and many courts have held that judicial economy is

---

**8.** Interestingly, the point is evidenced by the *McKart* and *McGee* cases and the *Northwest Airlines* case. In *McKart,* the Court held that the classification of defendant as a "sole surviving son" was an issue of statutory interpretation which did not require administrative review, but in *McGee,* the Court held that the classification of a "conscientious objector" did require such review. Similarly, in *Northwest Airlines,* the district court believed that the no-strike clause was established by a statutory provision not subject to arbitrative interpretation, while the court of appeals held that the clause may have been contractually agreed to and could appropriately be considered by the arbitrator.

not promoted by requiring an employer to go first to arbitration because the statute enables either party to bring an action in court to enforce, vacate, or modify the arbitrator's award. *See* 29 U.S.C. § 1401(b)(2). *See also e.g., Stockton Tri,* 727 F.2d at 1210. We disagree.

First, as the Supreme Court stated in *McKart,* "A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." 395 U.S. at 195, 89 S.Ct. at 1663. Second, "even if one party appeals the arbitral decision, courts will have the benefit of the arbitrator's sifting of the facts." *Stockton Tri,* 727 F.2d at 1208. *See also Grand Union,* 6 E.B.C. at 2534. Even where the underlying facts are not in dispute, this "sifting" by an arbitrator skilled in pension matters will benefit a district court's review of the legal issues. *Id.* Finally, as the Court also said in *McKart,* "[I]t is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." 395 U.S. at 195, 89 S.Ct. at 1663. *See also Adkins & Adkins,* 597 F.Supp. at 126. We believe this concern applies equally to an arbitrative scheme as to an administrative scheme. In fact, this concern was expressed as to the arbitrative scheme of the MPPAA by the court in *Bowling & Hildebrand:* "Judicial economy is best served by encouraging compliance with the statute's dispute resolution provisions, not by rewarding a party's refusal to even attempt to meet those requirements." Order at 8.

Returning to the rule set forth in *McKart, see supra* pp. 636 and 637, we believe the interests underlying the exhaustion rule clearly outweigh the relatively slight burden placed on defendant under the MPPAA. The purposes of the arbitration requirement are best served by the parties resorting first to arbitration, even where one of the parties believes the issues are limited to statutory interpretation.[9]

*Chipman's Failure to Arbitrate*

Little more need be said. Here, as in all of the cases discussed, it is undisputed that the defendant did not initiate arbitration within the time specified by the MPPAA. We hold on reconsideration that the question of whether Chipman was an "employer" within the meaning of the MPPAA was an issue for the arbitrator to determine initially. "There is nothing in the record to suggest that an arbitration panel would be unable to make such a determination." *Harold,* Memorandum Op. at 9–10; *Towner Manufacturing,* Memorandum Op. at 11 (both citing *Pelbro Fuel,* slip op. at 15). By failing to initiate arbitration within the required period, Chipman waived its right to contest the withdrawal liability.

CONCLUSION

The Fund's Motion to Alter or Amend the Judgment is granted. We vacate our memorandum opinion of June 24, 1986, and we grant summary judgment against defendant Chipman and in favor of the plaintiff Fund on the grounds stated herein in the amount of $178,404.78.[10]

---

9. Chipman notes that every court of appeals to address the issue is aligned with our earlier decision and the other non-waiver cases. In fact, the Second, Third, Ninth, and D.C. Circuits have all held that exhaustion of the arbitration remedy was not required under the facts of the cases before them. *See supra* at pp. 633–34. However, all of those cases involved either prudential judgments by district courts on whether exhaustion of arbitration was required where it was still available or facial constitutional challenges to the Act. *Id.* We have not been directed to, nor have we found, a circuit that has considered an appeal of a case in which an employer has been held to have waived his right to district court review because of failure to arbitrate. That not one of the many cases so holding has been appealed (in an area in which both employers and pension plans have been quite litigious) in fact suggests that those district court holdings are sound.

10. The Trustees have adjusted this figure several times. *See Robbins v. Chipman,* Memorandum Op. at 2 & n. 2. This is the figure they now

seek. *See* Petition for Fees, Costs and Double Interest at 2; Affidavit of Jeff McClellan at 2.